THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JESSE BENNIEFIELD, Defendant-Appellant.

First District (1st Division)   No. 79-375

Opinion filed September 8, 1980.

Ralph Ruebner and Susan Solovy, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Mary Ellen Dienes and Armand L. Andry, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

This is an appeal from the circuit court of Cook County wherein the defendant, Jesse Benniefield, was found guilty of the crime of murder. After a jury trial the defendant was sentenced to not more than 14 years nor less than 18 years in the State penitentiary.

The issues presented for review are: (1) whether a defendant who testifies on his own behalf may be impeached by prior statements made during plea negotiations; (2) whether the trial court erred in refusing to issue defendant's tendered jury instruction on voluntary manslaughter; (3) whether the trial court erred in denying a request of the jury during its deliberations; and (4) whether the defendant waived the issue of impeachment.

At trial, the State presented, among other things, six eyewitnesses to the occurrence. These witnesses revealed that on the date in question the defendant and the decedent, Johnny Waits, were two of many players in a dice game. During the game the defendant bet against Johnny Waits and lost. Johnny Waits picked up the defendant's money. The defendant then complained to Johnny Waits that he had taken the defendant's money, after which the defendant walked away from the game. About 30 minutes later the defendant returned with a gun and said to Johnny Waits, "Johnny, drop my money." Although Johnny Waits then tried to give the defendant some money, the defendant shot him and ran away. The defendant's gun was the only gun seen by the witnesses during the incident.

The defendant testified on his own behalf. On the date in question he had been in a dice game with Johnny Waits. After playing for some time, the defendant had won most of the money and was on his knees counting it when Willie Logan picked up the dice and said the defendant had been shooting loaded dice. Defendant testified that Johnny Waits then kicked him in the chest. When the defendant got up he pushed Waits and ran out to the street, being chased by three of the dice players. Later, the defendant was walking down an alley when he heard someone call his name. The defendant turned around and saw Johnny Waits and six other men. Defendant testified that Johnny Waits had a gun and told the defendant to drop the money. Defendant testified further that Johnny Waits then fired at him twice, striking him once in the left arm. The defendant said he then started to run and fired one shot back.

The assistant state's attorney, on cross-examination, asked the defendant if he remembered a prior hearing before the trial judge on August 1, 1978. He said he remembered and was then asked if he recalled

a question of the court: "Tell me what happened." He stated that he remembered and was then asked about certain omissions in his answer to that question. He stated that he never told the trial judge during the earlier hearing that Logan, Jackson and Waits had chased him.

The prosecutor continued cross-examination with questions concerning the circumstances when the defendant headed back toward the dice players, and Johnny Waits, Albert Jackson, Curtis Jackson, Ned Waits and Willie Logan approached him from behind. It was Johnny Waits who had called him and who was standing at the head of the group. The defendant said that Johnny Waits told him to drop the money. Again in reference to the prior hearing, the defendant was asked if he told the trial judge the same thing, and answered that he was never asked.

On redirect, defendant said that he had testified before the trial judge at the prior hearing for only two to three minutes.

After both sides rested, the defendant tendered an instruction on voluntary manslaughter. The court refused the defendant's request for such an instruction.

During deliberations, the jury sent a note to the court asking what was the cause of the defendant's wound and whether there were hospital records to support it. The court instructed the jury that it must decide the case on the evidence and instructions submitted. After deliberating further, the jury found the defendant guilty.

After a sentencing hearing the defendant was sentenced to 14 to 18 years in the State penitentiary. The defendant now appeals from said conviction.

The defendant contends his conviction must be reversed because the State introduced evidence of his testimony given at a plea bargaining session, in violation of Illinois Supreme Court Rule 402(f), which provides, in pertinent part, as follows:

> "In hearings on pleas of guilty, there must be substantial compliance with the following:
>
> * * *
>
> (f) If a plea discussion does not result in a plea of guilty, or if a plea of guilty is not accepted or is withdrawn, or if judgment on a plea of guilty is reversed on direct or collateral review, neither the plea discussion nor any resulting agreement, plea, or judgment shall be admissible against the defendant in any criminal proceeding." Ill. Rev. Stat. 1977, ch. 110A, par. 402(f).

■■ Before discussing the issues under Rule 402(f), it must be pointed out that this court has the benefit of being guided by the cases of *People v. Morris* (1979), 79 Ill. App. 3d 318, 398 N.E.2d 38, and *People v. Hill* (1980), 78 Ill. 2d 465, 401 N.E.2d 517, which interpret Rule 402(f) as to the unavailability of use of testimony given during plea negotiations. The trial

court, and the respective counsels at trial, did not have the benefit of these two cases, which make it clear that Rule 402(F) prohibits the use of plea negotiation statements in order to insure that plea discussions may be conducted in an atmosphere of candor, free of the risk that statements made during negotiations will be used as evidence of guilt. See *Hill*, 78 Ill. 2d 465, 472; *Morris*, 79 Ill. App. 3d 318, 332.

The importance of plea bargaining in the administration of criminal justice was recognized by the United States Supreme Court in *Santobello v. New York* (1971), 404 U.S. 257, 30 L. Ed. 2d 427, 92 S. Ct. 495, where the court said,

> "[t]he disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called 'plea bargaining,' is an essential component of the administration of justice. Properly administered, it is to be encouraged. If every criminal charge were subjected to a full-scale trial, the States and the Federal Government would need to multiply by many times the number of judges and court facilities.
>
> Disposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for many reasons. It leads to prompt and largely final disposition of most criminal cases; it avoids much of the corrosive impact of enforced idleness during pretrial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to continue criminal conduct even while on pretrial release; and, by shortening the time between charge and disposition, it enhances whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned. See *Brady v. United States*, 397 U.S. 742, 751-752 (1970)." (*Santobello*, 404 U.S. 257, 260-61, 30 L. Ed. 2d 427, 432, 92 S. Ct. 495, 498.)

This very language was quoted by the Illinois Supreme Court in *Hill*, 78 Ill. 2d 465, 471-72, wherein the court reversed the defendant's murder conviction because the State introduced admissions made by the defendant during plea negotiations.

The importance of plea bargaining has been highlighted by Mr. Justice Douglas' concurring opinion in *Santobello* wherein he points out that in 1964 guilty pleas accounted for 95.5% of all criminal convictions in the State of New York and 90.2% of all criminal convictions in United States district courts. *Santobello*, 404 U.S. 257, 264 nn.1 & 2, 30 L. Ed. 2d 427, 434 nn.1 & 2, 92 S. Ct. 495, 499-500 nn.1 & 1a.

In *Morris* the Illinois Appellate Court reversed the defendant's armed robbery conviction, wherein the State cross-examined the defendant regarding incriminating statements made during plea negotiations and

introduced a rebuttal witness who testified as to those statements. In justifying the reversal, the court stated:

> "[O]nce the need for plea bargaining is recognized, it becomes apparent that no properly advised defendant will fully and candidly participate in such negotiations if statements made during the negotiations may be used against the defendant when negotiations fail. Further, it would be inherently unfair to allow the State to encourage defendants to participate in plea bargaining and then, if negotiations fail, use that participation against the defendant. (See *United States v. Ross* (5th Cir. 1974), 493 F.2d 771.) In response to this problem, Rule 402(f) was enacted to protect communications made by the defendant in the bargaining process from being turned into a weapon of the State at a later trial." *Morris*, 79 Ill. App. 3d 318, 332.

In the case at bar, the State argues that Rule 402(f) is inapplicable where the defendant testifies in his own behalf and he is cross-examined by use of his plea negotiation testimony, which is used as evidence of impeachment by omission. To support this contention the State argues by analogy, citing *Harris v. New York* (1971), 401 U.S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643, which allowed use of prior conflicting statements to impeach the defendant even though the statements had been excluded from the State's case in chief under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. This analogy, however, is without basis. *Miranda* prohibits a prosecutor from using evidence obtained through unconstitutional methods. A defendant in a *Miranda* situation generally has not had voluntary participation, or relinquishment of rights, during the activity wherein the evidence has been obtained. Because of this he cannot be said to have been trapped into waiving his rights. On the other hand, during plea negotiations the State is an active participant in encouraging the defendant to (a) waive his rights to a jury trial; (b) to confront his accusers; (c) to present witnesses in his defense; (d) to remain silent; and (e) to be convicted by proof beyond all reasonable doubt. (See Mr. Justice Douglas' concurrence in *Santobello*, 404 U.S. 257, 264, 30 L. Ed. 2d 427, 434, 92 S. Ct. 495, 500.) Because of the State's active participation in encouraging the defendant to waive many of his basic rights, plea negotiations should not be a pitfall or trap to the unwary defendant whenever a plea agreement is not reached or not approved by the court. Rule 402(f) is not ambiguous and does not provide for exceptions. If this court were to carve out an exception in this case, it would cause a chilling effect on defendants who consider entering into plea bargaining.

The importance of plea bargaining and the protection of rights of a

defendant under Rule 402(f) have recently been the subject of this court's ruling in *In re Jones* (1980), 85 Ill. App. 3d 1122, wherein an order committing the minor-respondent to the Department of Corrections was reversed in view of the improper use of the minor's plea negotiation testimony. In order to preserve full and candid participation in plea bargaining, a consistent policy of adherence to the prohibition of Rule 402(f) must be maintained.

For the foregoing reasons, we conclude the State violated Rule 402(f) in cross-examining the defendant as to the statements he made during plea negotiations.

We next turn to the question of waiver. The State argues the defendant has waived the 402(f) issue by failure to object and by failure to include the issue in his post-trial motion.

After a complete review of the entire record, it is apparent that defendant's only objections to the cross-examination, as to his prior testimony, were that the questions had been asked and answered and that impeachment by omission was improper. The record fails to reveal an objection on the grounds that the State improperly used defendant's testimony from a plea bargaining session. Normally, under these circumstances, the defendant has waived any possible error. See generally *People v. Donald* (1977), 56 Ill. App. 3d 538, 548, 371 N.E.2d 1101; *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838; *People v. Toughy* (1964), 31 Ill. 2d 236, 201 N.E.2d 425.

Notwithstanding the above, the defendant claims it was plain error for the trial court to allow impeachment by the use of a plea discussion. Supreme Court Rule 615 (Ill. Rev. Stat. 1977, ch. 110A, par. 615) provides that plain errors affecting substantial rights may be noticed although they were not brought to the attention of the trial court. The exercise of this option is discretionary by the reviewing court (*People v. Fleming* (1964), 54 Ill. App. 2d 457, 203 N.E.2d 716), depending on the closeness of the case, the conduct of the trial judge, the extent to which the error may have contributed to the verdict, and the magnitude of the error alleged. *People v. Lagardo* (1967), 82 Ill. App. 2d 119, 226 N.E.2d 492; *People v. Jones* (1971), 131 Ill. App. 2d 361, 268 N.E.2d 248.

With regard to the above issues, Illinois courts of review have recognized the devastating effect of the use of plea negotiation testimony and have held that the use of such testimony was so prejudicial as to require reversal as plain error. *People v. Friedman* (1980), 79 Ill. 2d 341, 403 N.E.2d 229; *Hill*; *People v. Steptore* (1972), 51 Ill. 2d 208, 281 N.E.2d 642.

Examining the case at bar, it is apparent that even though the State did not inform the jury that the statements used for impeachment were

from a plea negotiation session, the prosecutors repeatedly referred to the statements as being made under oath, before the trial judge at a time approximately one week before the defendant's trial. During redirect examination the defendant was allowed to rehabilitate his credibility somewhat. However, he was realistically unable to explain to the jury the precise circumstances of the hearing and the jury, therefore, was left to speculate as to the nature of the hearing wherein the alleged impeaching testimony was given.

■ Considering the circumstances, we are justified in noticing the error as plain error under Supreme Court Rule 615. Accordingly, defendant's conviction is reversed and the cause will be remanded for a new trial.

The defendant also alleges that the trial court erred in refusing to issue defendant's tendered jury instruction on voluntary manslaughter and in denying a request of the jury during its deliberations.

Where a judgment is reversed on one ground, other grounds of reversal assigned will not be passed on, when the same questions, in all probability, will not arise on a retrial and subsequent appeal. See *City of Chicago v. Callender* (1947), 396 Ill. 371, 71 N.E.2d 643; *Minnis v. Friend* (1935), 360 Ill. 328, 196 N.E. 191.

■ Since defendant's conviction is reversed for the State's use of defendant's plea negotiation testimony, the questions of jury instructions and the jury's request need not be considered.

For the above and foregoing reasons the judgment of the circuit court of Cook County convicting the defendant of murder is hereby reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

GOLDBERG, P. J., and O'CONNOR, J., concur.