THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHRISTOPHER CONNERY, Defendant-Appellant.

Third District    No. 3—97—0164

Opinion filed May 1, 1998.

LYTTON, J., specially concurring.

Sherry R. Silvern, of State Appellate Defender's Office, of Ottawa, and Ronald Boyer (argued), of Boyer & Thompson, of Watseka, for appellant.

Michael Kick, State's Attorney, of Kankakee (John X. Breslin and Nancy Rink Carter (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOLDRIDGE delivered the opinion of the court:

Following a jury trial, the defendant was convicted of first degree murder (720 ILCS 5/9—1(a)(1) (West 1992)) and concealment of a homicidal death (720 ILCS 5/9—3.1(a) (West 1992)). He was sentenced to natural life imprisonment on the first degree murder conviction and five years' imprisonment on the concealment of a homicidal death conviction. On appeal, defendant maintains that: (1) the trial court committed reversible error in admitting evidence of his statements made during a hearing in which a guilty plea to the charges at issue was entered of record; (2) he was afforded ineffective assistance of counsel; and (3) his natural life sentence was excessive. We affirm.

## Facts

The defendant and James Rogers were charged in the stabbing death of Melissa Osman. While awaiting trial, the defendant confessed to police in a video-taped statement that both he and Rogers stabbed Osman after each had sex with her.

In March 1996, the defendant entered into a plea agreement with the People, agreeing to exchange his truthful testimony against Rogers for a 55-year sentence on the murder charge and the dismissal of all other charges against him. At a hearing for the purpose of entering the agreed plea, the trial court accepted the agreement and entered judgment on the plea. After entering judgment, the trial court permitted the People to examine the defendant, under oath, to elicit testimony that his video-taped confession was both truthful and voluntary. The defendant's counsel did not object to this questioning.

At the time the trial court entered judgment, it was agreed that sentencing would be deferred until after the Rogers trial. However, the defendant was never called to testify at the Rogers trial.

Subsequently, the defendant filed a motion to vacate his guilty plea, which the trial court denied. He then requested that a sentence of 55 years be imposed in accordance with the plea agreement. The People maintained, however, that they were not bound to the plea agreement since defendant had not testified at the Rogers trial. The court then held that in fundamental fairness the defendant should be permitted to withdraw his guilty plea.

At defendant's jury trial, the People presented testimony establishing that in the early morning hours of July 12, 1995, the defendant, Rogers, and Osman left a tavern together. Osman and the defendant were also seen near a car in the tavern's parking lot, and Rogers was observed sitting in the passenger seat of the car. On July 14, 1995, Osman was reported missing. The next day, her partially clad body was found in a rural area not far from her home, lying under some plastic garbage bags filled with leaves.

Pathologist Dr. Joseph Sapala testified that Osman died from approximately 26 stab wounds to her body, which he opined were inflicted by two different knives, one a double-edged knife and the other a single-edged knife.

Physical evidence linking the defendant to the murder was also introduced during the People's case, including bloodstained clothing and two knives found in the defendant's car, two latent fingerprints of the defendant's found on one of the plastic garbage bags, and blood taken from the defendant's sandals that matched Osman's DNA.

The defendant's testimony at trial was that he did not know Osman, but he met her when he and Rogers went to the tavern where

they were seen together by the People's witnesses. He testified that Osman told him that she had missed her ride and he offered her a ride home. She accepted the offer, and the three (Osman, Rogers and the defendant) left the tavern in the defendant's car. According to the defendant, Rogers directed him to a rural area where he parked the car. The defendant stated that, at Rogers' request, he got out of the car to give Osman and Rogers some privacy. After about 10 minutes, he returned to the car where he saw Osman wearing only her shirt and bra, while Rogers was allegedly pulling up his pants.

According to the defendant, Osman then beckoned him to have sex with her. When they finished, he got out of the car and walked a short ways. He next saw Rogers and Osman standing along the front fender of the car. Rogers was holding a knife and the defendant watched as Rogers stabbed Osman in the back. Rogers then handed the knife to the defendant and told him to stab Osman. Defendant stated that he was unable to do so, and he returned the knife to Rogers, who continued stabbing Osman. The defendant denied stabbing Osman.

The defendant then testified that he and Rogers placed garbage bags on top of Osman's body and left the area. He testified that the two drove around for awhile until they found a pond in which to clean up, then went to a store and then to a restaurant. Defendant stated that he did not contact the authorities and continued his association with Rogers out of his fear of Rogers.

During his direct examination, the defendant recanted his videotaped confession. He attributed his false confession to his lack of sleep, the effect of recent nightmares about the incident, and his remorse for not trying to stop Rogers from stabbing Osman. On cross-examination, however, the People impeached the defendant with his statements that the confession was true and voluntary, which had been given under oath at the hearing where his guilty plea had been entered and accepted. Defense counsel did not object to this impeachment. Defendant was convicted, sentenced to natural life, and brought this appeal.

## Analysis

### Admissibility of Guilty-plea Hearing Testimony

■ Defendant first maintains that the trial court committed reversible error when it allowed into evidence statements the defendant made during the hearing at which his guilty plea was accepted by the trial court. Specifically, defendant contends it was error for the jury to hear of his statements under oath acknowledging the veracity and voluntary nature of the confession wherein he admitted

to stabbing Osman. Defendant contends that the use of this testimony was in direct violation of Supreme Court Rule 402(f) (134 Ill. 2d R. 402(f)), which provides in pertinent part:

> "If a plea discussion does not result in a plea of guilty, or if a plea of guilty is not accepted or is withdrawn, or if judgment on a plea of guilty is reversed on direct or collateral review, neither the plea discussion nor any resulting agreement, plea, or judgment shall be admissible against the defendant in any criminal proceeding." 134 Ill. 2d R. 402(f).

The purpose of Rule 402(f) is " 'to protect communications made by the defendant *in the bargaining process* from being turned into a weapon of the State at a later trial.' " (Emphasis added.) *People v. Benniefield*, 88 Ill. App. 3d 150, 154, quoting *People v. Morris*, 79 Ill. App. 3d 318, 332 (1979). In the instant matter, the defendant maintains that the statements at issue were made during the bargaining process and thus are protected by Rule 402(f). The People maintain, however, that because the statements at issue were given *after* the defendant's guilty plea was entered and accepted by the trial court, the protection afforded by Rule 402(f) does not apply. After careful review of case law interpreting Rule 402(f), we must agree with the People that the statements made by the defendant were not of the type intended to be protected by Rule 402(f).

In *People v. Bennett*, 222 Ill. App. 3d 188 (1991), the court found that Rule 402(f) did not reach testimony given by a defendant at a hearing on her motion to withdraw her guilty plea. The court reasoned that the central policy behind Rule 402(f) is to prevent a jury from hearing of any statements made by a defendant during the process of attempting to reach a plea agreement or the fact that a defendant had reached an agreement to plead guilty. Since the plea bargain process is completed when the plea is entered, statements made after an agreement has been reached and the plea has been entered are not covered by Rule 402(f). See *Bennett*, 222 Ill. App. 3d at 198. In *People v. Benniefield*, unlike in the instant matter, the appellate court held to be inadmissible statements made by a defendant in the process of negotiating a guilty plea. *Benniefield*, 88 Ill. App. 3d at 154-55.

■ Here, the record indicates that the statements made by the defendant were made *after* his plea had been fully negotiated and the plea had been entered and accepted by the trial court. Under these circumstances, we find that no reversible error occurred in defendant's admission of the veracity of his confession. We note, however, that had the statements been made *prior* to entry of the plea and its acceptance by the trial court, our analysis may have been different.

## Ineffective Assistance of Counsel

The defendant next contends that he received ineffective assistance of counsel. Specifically, the defendant alleges his counsel was ineffective in: (1) that he admitted the defendant's guilt and gave the jury no theory upon which to return a not guilty verdict; (2) that he failed to object to an accountability instruction given to the jury; (3) that he called the defendant to testify; and (4) that he failed to subject the People's case to adversarial challenge by failing to meaningfully cross-examine the People's witnesses, failing to object to hearsay testimony and testimony without foundation, failing to move for a mistrial, failing to object to the People's use of defendant's testimony at his plea agreement hearing, failing to object to comments made during the People's closing argument, and failing to file posttrial motions.

■ To prove ineffective assistance the defendant must first demonstrate that his counsel's performance failed to meet reasonable professional standards. Second, the defendant must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). In this case we are unable to conclude that counsel's performance failed to meet reasonable professional standards. Even were we to so conclude, we find that any defects in counsel's performance were not so severe as to demonstrate a reasonable probability of a different result absent the defects.

■ First, we find that counsel did not admit the defendant's guilt to the jury as he alleges. The record reflects that after commenting to the jury that "much of the evidence you will hear will be exactly as [the People] described," defense counsel added, "[t]here is no doubt that Melissa Osman was brutally murdered." Simply acknowledging that the victim's death was a brutal murder is not a concession of defendant's guilt. Defense counsel also commented to the jury that "when you have heard all of the evidence, you'll find that James Rogers committed this murder by his own hand." We find that these comments, rather than acknowledging the defendant's guilt, instead reflect defense counsel's effort to shift total responsibility for the murder to Rogers.

Defense counsel's strategy, given the overwhelming physical evidence placing defendant at the murder scene, was to paint the picture of the defendant as an unwilling observer of Rogers' evil deed. Counsel argued strenuously against the pathologist's theory that Osman was stabbed by two different knives, and vigorously cross-examined the pathologist and other witnesses on this point. Counsel

also elicited testimony from the defendant that, upon witnessing Rogers' brutal attack upon Osman, he became deathly afraid of Rogers to the point of being unable to act to stop Rogers or report his actions to the authorities. In view of the evidence against the defendant, we cannot say that counsel was unprofessional in pursuing this theory over any other theory, and we will not find a trial counsel ineffective simply because he failed to contrive a leak-proof theory of innocence in the face of overwhelming evidence. *People v. Shatner*, 174 Ill. 2d 133, 148 (1996).

The defendant next asserts that, although his counsel suggested that there was doubt as to whether he actually stabbed the victim, he was ineffective in failing to object when the court gave an accountability instruction. See *People v. Chandler*, 129 Ill. 2d 233, 247 (1989). We disagree. While defense counsel failed to object to the giving of an accountability instruction, the record indicates that he nonetheless presented evidence against holding the defendant accountable for Rogers' actions, and he attacked the accountability theory in his closing argument. We find that the defendant has failed to establish that he was prejudiced by his counsel's failure to object to the accountability instruction. Thus, he has failed to carry his burden of showing prejudice under the second prong of the *Strickland* test, which requires "a reasonable probability of a different result, not merely a possibility" of a different result. *People v. Gacy*, 125 Ill. 2d 117, 129-30 (1988).

Defendant also asserts that his counsel was ineffective for calling him to testify. Calling the defendant as a witness can be ineffective assistance where no exculpatory evidence is introduced in defendant's testimony and no logical reason for counsel to have called defendant as a witness can be perceived by a reviewing court. See *People v. Salgado*, 200 Ill. App. 3d 550, 553 (1990). In the instant matter, however, the defendant's testimony appears to have been presented to introduce exculpatory evidence and to advance the defendant's theory that, while he was present at the murder, he took no part in it. We cannot say that there was, therefore, no logical reason for counsel to have called the defendant as a witness. We also note that, ultimately, the decision to testify rested with the defendant. *People v. Brocksmith*, 162 Ill. 2d 224, 227 (1994).

As his final ineffective assistance argument, the defendant contends that his counsel, by several cumulative errors, failed to subject the People's case to adversarial challenge. *People v. Hattery*, 109 Ill. 2d 449, 463 (1985). We have reviewed the record and determined that counsel subjected the People's case to a meaningful adversarial challenge. The record reveals that defense counsel pre-

sented an opening statement and closing argument in which he asserted a plausible theory of defense, cross-examined the People's witnesses, and challenged the credentials of one of the People's witnesses to testify as an expert. Defense counsel moved for a mistrial on one occasion and objected strenuously to the admission of adverse evidence. He presented witnesses in defense and sought to minimize defendant's involvement and shift the blame to Rogers. Based upon our review of the record, we find that defense counsel exhibited the hallmarks of a meaningful adversarial challenge to the People's case. See *People v. Shatner*, 174 Ill. 2d at 146-48.

## Excessive Sentence

■ The defendant lastly contends that his sentence of natural life imprisonment was excessive. A court of review will not overturn a sentence imposed by a trial court as excessive unless the trial court abused its discretion in imposing such a sentence. *People v. Saunders*, 235 Ill. App. 3d 661 (1992).

A court may sentence a defendant to natural life imprisonment for first degree murder if it finds that the defendant's conduct was exceptionally brutal or heinous behavior indicative of wanton cruelty. 730 ILCS 5/5—8—1(a)(1)(b) (West 1994). Our supreme court, in *People v. La Pointe*, 88 Ill. 2d 482, 501 (1981), defined brutal conduct as grossly ruthless, devoid of mercy or compassion, cruel and cold-blooded. Likewise, heinous conduct was described as conduct that is "hatefully or shockingly evil: grossly bad: enormously and flagrantly criminal." *La Pointe*, 88 Ill. 2d at 501.

The defendant contends that the trial court abused its discretion in finding that his conduct was exceptionally brutal or heinous. We disagree. While all murders are brutal and heinous to a certain degree, based upon the evidence that Osman was alive during the time she received more than 26 stab wounds, was covered with garbage and left to die, and defendant's callous attitude and complete lack of remorse immediately after the stabbing, we are satisfied that the trial court did not abuse its discretion in imposing the natural life sentence.

The defendant also asserts that the trial court failed to consider certain mitigating factors, including his rehabilitative potential, when it imposed the sentence of natural life. On review, however, it is presumed that the trial court considered all mitigating factors, including rehabilitative potential, and the burden is upon the defendant to show the contrary. *People v. McClellan*, 232 Ill. App. 3d 990 (1992). A review of the record establishes that the trial court considered all mitigating factors. We note that rehabilitation potential is a factor in

sentencing, but the court is not required to give it greater weight than other factors. See *People v. Fort*, 229 Ill. App. 3d 336, 341-42 (1992). Based upon our review of the record, we find that the trial court's imposition of a natural life imprisonment sentence was not an abuse of its discretion.

Based on the foregoing, the circuit court of Kankakee County is affirmed.

Affirmed.

McCUSKEY, J., concurs.

JUSTICE LYTTON, specially concurring:

It is the policy of this state to encourage plea agreements when properly administered. *People v. Evans*, 174 Ill. 2d 320, 325, 673 N.E.2d 244, 247 (1996). Prosecutors often negotiate these agreements with defendants to obtain testimony in other cases. I am concerned that the improper use of plea agreements would hinder the State's ability to get important evidence.

The majority holds that defendant's testimony after the acceptance of his guilty plea was admissible at his subsequent trial. While I concur based on the record in this case, this decision should be narrowly construed.

Thus, if the plea agreement had been contingent on defendant giving self-incriminating testimony immediately after the acceptance of the plea, fundamental fairness would require this testimony to be excluded from his later trial. Otherwise, because of the timing of the sworn testimony, the State could time the defendant's admissions so that they could later be used against the defendant if the plea were vacated. Such a procedure could lead to radical changes in the strategies of defense attorneys, which would significantly reduce the number of these plea agreements and limit the evidence obtained by prosecutors.

For the reasons stated, I specially concur in the majority's reasoning only as it applies to the specific facts of this case.