2020 IL App (3d) 180117

Opinion filed July 14, 2020

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
|---|---|---|
| | ) | of the 14th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Rock Island County, Illinois. |
| | ) | |
| | ) | Appeal No. 3-18-0117 |
| v. | ) | Circuit No. 10-CF-298 |
| | ) | |
| | ) | |
| ANTWOINE TEDDY EUBANKS, | ) | The Honorable |
| | ) | Frank R. Fuhr, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE LYTTON delivered the judgment of the court, with opinion.
Justice Carter concurred in the judgment and opinion.
Justice McDade dissented, with opinion.

**OPINION**

¶ 1     Defendant was charged with first degree murder (720 ILCS 5/9-1(a) (2) (West 2010)) and

aggravated battery with a firearm (720 ILCS 5/12-4.2(a)(1) (West 2010)). Approximately one year

later, defendant provided a videotaped statement to detectives. Soon thereafter, he pled guilty to

first degree murder. Defendant later filed several motions to withdraw his guilty plea, which the

trial court granted. Defendant's case proceeded to a stipulated bench trial, where defendant's

statement was admitted into evidence. Defendant was found guilty of first degree murder and

sentenced to 50 years in prison. Defendant filed a postconviction petition, alleging that his trial

counsel was ineffective for failing to suppress his videotaped statement pursuant to Illinois Supreme Court Rule 402(f) (eff. July 1, 2012). The petition proceeded to a third-stage evidentiary hearing, where the trial court denied it. Defendant appeals, arguing that the trial court erred in denying his postconviction petition because his videotaped statement was inadmissible at trial. We affirm.

¶ 2                                    BACKGROUND

¶ 3        Defendant was arrested on April 14, 2010, and charged with one count of first degree murder for killing Samuel Rush and one count of aggravated battery with a firearm for shooting Erik Childs. Defendant initially denied any involvement in the crimes.

¶ 4        On April 19, 2011, defendant participated in a videotaped interview with two Rock Island detectives, Gene Karzin and Tina Noe, along with his attorney, Daniel Dalton. Assistant State's Attorney Norma Kauzlerich was outside the room watching the interview and texting questions to Karzin. Defendant confessed that he and two other men, Pashanet Reed and Stephan Phelps, lured the victims to a specific location, where defendant shot them. After the defendant made his statement, Dalton left the room, presumably to speak with Kauzlerich, to "make sure we're good."

¶ 5        On May 11, 2011, defendant appeared in court to enter a guilty plea. The State indicated that the parties had reached a "negotiated disposition" pursuant to which the State recommended that defendant be sentenced to 35 years in prison for first degree murder and dismiss the aggravated battery with a firearm charge, provided that defendant "continues to truthfully cooperate and, if necessary, truthfully testify." The trial court entered judgment for first degree murder and dismissed the aggravated battery charge against defendant. The matter was continued for sentencing "pending the defendant's cooperation with the co-defendants' cases."

¶ 6 Defendant filed motions to withdraw his guilty plea on November 10, 2011, February 14, 2012, and March 27, 2012. On March 28, 2012, the trial court held a hearing on the motions. At the hearing, the State indicated that it would stand by its offer in exchange for defendant's cooperation. The trial court allowed defendant to withdraw his guilty plea.

¶ 7 On May 15, 2012, defendant filed a motion to suppress his videotaped statement, alleging that it was "obtained in violation of [his] rights as guaranteed by the Fifth and Fourteenth Amendments to the federal Constitution." According to the motion, "the plea agreement reached by defendant and the State required defendant to plead guilty to the *** First Degree Murder charge, provide a true statement as to his involvement in the murder, and testify if necessary, against the other co-defendants." In exchange, the State would recommend that defendant receive a 35-year prison sentence for first degree murder and dismiss the aggravated battery with a firearm charge. The motion further stated that "pursuant to his obligation under the bargain reached with the State, [defendant] provided a videotaped statement to law enforcement officials and attorneys from the Rock Island County State's Attorney[']s office." The trial court denied defendant's motion to suppress.

¶ 8 Defendant's case proceeded to a stipulated bench trial. The stipulations established that on March 30, 2010, Rush and Childs were found shot inside a vehicle. Reed and Phelps were found fleeing from the scene in a dark green Lincoln.

¶ 9 Phelps told police that he was with defendant on March 30, 2010, and traded a gun with defendant that day. Phelps gave police the gun and ammunition defendant gave him. Reed told police that defendant shot Rush and Childs.

3

¶ 10  Officers located a cell phone at the scene of the shooting. Defendant drove to a store after the murder to obtain a new "SIM card" with the same cell phone number as the phone located at the scene.

¶ 11  Reed and Phelps would have testified that they drove around in a green Lincoln drinking alcohol and smoking cannabis with defendant on March 30, 2010. They went to defendant's brother's house, where defendant picked up a rental car. Phelps called Rush to set up a cannabis transaction. Upon meeting up, Rush exited his vehicle and walked toward the green Lincoln. Defendant then ran from the side of a house and started shooting into Rush's car. Rush ran toward his car, and defendant ran around the back of the car and shot Rush.

¶ 12  The State presented defendant's videotaped interview. The prosecutor stated that Noe and Karzin "interviewed the defendant pursuant to a proffer agreement." In the interview, Rush told detectives that he, Reed, and Phelps drove around on March 30, 2010, smoking cannabis and drinking. He, Reed and Phelps traveled to Rock Island, where Phelps was supposed to meet Rush. He parked his rental car in an alley. He exited his vehicle and ran between houses toward Rush's vehicle. He shot Childs three times. When he saw Rush run back toward the car, he ran around the back of the car and shot Rush three times. He, Reed, and Phelps fled the scene. Reed and Phelps were in the Lincoln, and he was in the rental car. He discovered that he lost his phone during the shooting, so he drove to an I-Wireless store in Davenport.

¶ 13  The trial court found defendant guilty of first degree murder and sentenced him to 50 years in prison. Defendant appealed, arguing that his videotaped statement to police was inadmissible at trial. He also raised a claim of ineffective assistance of counsel. We affirmed defendant's conviction and sentence, finding that we could not determine if defendant's videotaped statement

was made pursuant to plea negotiations. *People v. Eubanks*, 2014 IL App (3d) 130021-U, ¶ 37. We recommended that defendant raise the issue in a postconviction petition. *Id.*

¶ 14    Thereafter, defendant filed a postconviction petition, alleging that his trial counsel was ineffective for failing to move to suppress his videotaped statement pursuant to Rule 402(f). Defendant later filed an amended petition. The State filed a motion to dismiss the amended petition. The court denied the State's motion, finding that the amended petition potentially alleged a claim of deficient representation that was not harmless. The petition proceeded to a third-stage evidentiary hearing.

¶ 15    At the third-stage hearing, Dalton testified that the State approached him about defendant providing evidence against Reed and Phelps. According to Dalton, the State agreed to provide defendant with a 35-year prison sentence in exchange for a statement from defendant and defendant's "further cooperation." Dalton arranged for defendant to give a videotaped statement to Karzin and Noe on April 19, 2011. Dalton stated that defendant's videotaped statement "never would have been made but for that plea agreement." Dalton said he would not have allowed defendant to give a statement without a plea deal in place.

¶ 16    Defendant agreed with Dalton's testimony regarding the events surrounding the plea deal. Defendant testified that Dalton told him "the State was willing to give me a deal." According to defendant, "in order for me to get the deal, I would have to give a statement, a truthful statement, of my involvement in the case." The plea deal also required defendant to testify against his codefendants "if need be." Dalton told defendant that the State was offering him a sentence of 35 years before defendant made his statement. Defendant said he would not have made the videotaped statement if it had not been required by the plea deal.

5

¶ 17 The trial court issued an order finding that defendant's April 19, 2011, statement "was not part of the plea discussion, but rather the result of the plea agreement, and thus Supreme Court Rule 402[(f)] was not violated." The court denied defendant's postconviction petition.

¶ 18 ANALYSIS

¶ 19 Defendant argues that the trial court erred in denying his postconviction petition following the third-stage hearing because his videotaped statement was made during plea discussions and, therefore, was inadmissible at trial under Rule 402(f). He contends that the statement was a condition precedent to his plea agreement.

¶ 20 The Post-Conviction Hearing Act (Act) provides a method for a criminal defendant to assert that "in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." 725 ILCS 5/122-1(a)(1) (West 2018). "A proceeding under the Act is a collateral attack on the judgment of conviction." *People v. Wrice*, 2012 IL 111860, ¶ 47.

¶ 21 The Act provides a three-stage process for adjudicating postconviction petitions. *People v. English*, 2013 IL 112890, ¶ 23. After a third-stage hearing, where the trial court made factual and credibility determinations, the trial court's decision will not be reversed unless it is manifestly erroneous. *Id.* However, if no new evidence is presented at the third-stage hearing, and the issue involves a pure question of law, *de novo* review applies. *Id.* Here, where testimony was presented at the third-stage hearing, we review the trial court's fact-finding and credibility determinations for manifest error and review *de novo* the trial court's ultimate legal conclusion that defendant's statement was admissible under Rule 402(f). See *People v. Tyler*, 2015 IL App (1st) 123470, ¶ 195 (factual and credibility decisions reviewed for manifest error; issues of law reviewed *de novo*).

¶ 22 Rule 402(f) provides:

6

"If a plea discussion does not result in a plea of guilty, or if a plea of guilty is not accepted or is withdrawn, or if judgment on a plea of guilty is reversed on direct or collateral review, neither the plea discussion nor any resulting agreement, plea, or judgment shall be admissible against the defendant in any criminal proceeding." Ill. S. Ct. R. 402(f) (eff. July 1, 2012). Statements by a defendant that are part of "plea discussions," within the meaning of Rule 402(f), cannot be admitted into evidence at the defendant's trial. *People v. Rivera*, 2013 IL 112467, ¶ 17.

¶ 23        "The purpose of Rule 402(f) is 'to encourage the negotiated disposition of criminal cases through elimination of the risk that the accused enter plea discussion at his peril.' " *Id.* ¶ 18 (quoting *People v. Friedman*, 79 Ill. 2d 341, 351 (1980)). The rule "was enacted to protect communications made by the defendant in the bargaining process from being turned into a weapon of the State at a later trial." *People v. Morris*, 79 Ill. App. 3d 318, 332 (1979). "[T]he central policy behind Rule 402(f) is to prevent a jury from hearing of any statements made by a defendant during the process of attempting to reach a plea agreement or the fact that a defendant had reached an agreement to plead guilty." *People v. Connery*, 296 Ill. App. 3d 384, 388 (1998).

¶ 24        Rule 402(f) is similar to Rule 410 of the Federal Rules of Evidence. See *People v. Victory*, 94 Ill. App. 3d 719, 722 (1981). Rule 410 provides that "statements made in the course of plea discussions between a criminal defendant and a prosecutor are inadmissible against the defendant." *United States v. Mezzanatto*, 513 U.S. 196, 197 (1995). The purpose of the rule is "encouraging plea bargaining." *Id.* at 207. Suppressing evidence of plea negotiations "serves the policy of insuring a free dialogue only when the accused and the government actually engage in plea negotiations." *United States v. Robertson*, 582 F.2d 1356, 1365 (5th Cir. 1978). By its terms, the rule excludes only those statements made "during plea discussions." Fed. R. Evid. 410(a)(4).

7

¶ 25 Federal courts have consistently held that statements made by a defendant after a plea agreement has been reached but before the defendant has pled guilty are admissible. See *United States v. Watkins*, 85 F.3d 498, 500 (10th Cir. 1996); *United States v. Hare*, 49 F.3d 447, 450 (8th Cir. 1995); *United States v. Lloyd*, 43 F.3d 1183, 1186 (8th Cir. 1994); United States v. *Knight*, 867 F.2d 1285, 1288 (11th Cir. 1989); *United States v. Davis*, 617 F.2d 677, 682-86 (D.C. Cir. 1979); *United States v. Stirling*, 571 F.2d 708, 731 (2d Cir. 1978). The rationale for these holdings is that, once a plea agreement is entered, plea negotiations terminate and the policy behind the rule is no longer applicable. *Knight*, 867 F.2d at 1288. Excluding statements made after and pursuant to a plea agreement "would not serve the purpose of encouraging compromise." *Davis*, 617 F.2d at 685. Rather, "such a rule would permit a defendant to breach his bargain with impunity." *Id.*

¶ 26 The Second District adopted the rationale of above-cited federal cases and held that Rule 402(f) does not apply to a defendant's statements made after a plea agreement has been reached. See *People v. Saunders*, 135 Ill. App. 3d 594, 606 (1985). The court found that the defendant's testimony made after and pursuant to a plea agreement "was not made while he was negotiating over the disposition of his case." *Id.* "Thus, the purpose of the rule, *i.e.*, to 'encourage the negotiated disposition of criminal cases,' would not be served by rendering the statements inadmissible." *Id.* (quoting *Friedman*, 79 Ill. 2d at 351). "In fact, *** such a holding would permit the defendant to 'breach his bargain with impunity.' " *Id.* (quoting *Davis*, 617 F.2d at 685).

¶ 27 This court similarly held that statements made by a defendant after he enters a guilty plea are admissible because they do not constitute "plea discussions" under Rule 402(f). See *Connery*, 296 Ill. App. 3d at 388. "Since the plea bargain process is completed when the plea is entered, statements made after an agreement has been reached and the plea has been entered are not covered by Rule 402(f)." *Id.*

8

¶ 28    "Plea agreements are essentially contractual in nature and *** are controlled largely by contract law." *People v. Caban*, 318 Ill. App. 3d 1082, 1089 (2001); see also *People v. Donelson*, 2013 IL 113603, ¶ 18 (contract law principles have been applied to plea agreements). "A condition precedent is an act or event, other than a lapse of time, which must exist or occur before a duty of immediate performance of a promise arises." (Internal quotation marks omitted.) *Wasserman v. Autohaus on Edens, Inc.*, 202 Ill. App. 3d 229, 236 (1990). "[W]here a contract contains a condition precedent, the contract does not become enforceable or effective until the condition is performed or the contingency occurs." *Dodson v. Nink*, 72 Ill. App. 3d 59, 64 (1979). "[W]here a condition goes solely to the obligation of the parties to perform, existence of such a condition does not prevent the formation of a valid contract." *McAnelly v. Graves*, 126 Ill. App. 3d 528, 532 (1984). "[C]onditions precedent are not generally favored." *A.A. Conte, Inc. v. Campbell-Lowrie-Lautermilch Corp.*, 132 Ill. App. 3d 325, 329 (1985).

¶ 29    Plea agreements may contain conditions precedent, such as the trial court's acceptance of the agreement. See *Marlow v. Marlow*, 563 S.W.3d 876, 884 (Tenn. Ct. App. 2018). If the condition is not met, there is no enforceable agreement. See *id.* at 885. If a plea agreement is "contingent upon" a condition being met, the agreement should make that clear. See *United States v. Saunders*, 226 F. Supp. 2d 796, 802 (E.D. Va. 2002). Otherwise, obligations set forth in the plea agreement will be construed to be part of the finalized plea agreement. See *State v. Moore*, 240 S.W.3d 248, 253 (Tex. Crim. App. 2007).

¶ 30    Here, the testimony at the third-stage evidentiary hearing established that a plea deal had been reached before defendant provided his videotaped statement. Dalton testified that the State agreed to a 35-year prison sentence in exchange for defendant providing a truthful statement and testifying against his codefendants, if necessary. Dalton told defendant about the agreement before

9

defendant provided his videotaped statement. Dalton stated that he would not have allowed defendant to make a statement without a plea deal in place. Defendant agreed with Dalton's testimony, stating that he would not have made the statement if it was not part of the plea deal.

¶ 31        The testimony was consistent with the assertions contained in defendant's May 15, 2012, motion to suppress, wherein defendant stated that "the plea agreement reached by defendant and the State required [him] to plead guilty to the *** first degree murder charge, provide a true statement as to his involvement in the murder, and testify if necessary against the other co-defendants" in exchange for the State recommending that he receive a 35-year prison sentence and dismissing the other charge against him. Further, according to the motion, defendant provided his videotaped statement "pursuant to his obligation under the bargain reached with the State."

¶ 32        Based on the record, defendant provided his videotaped statement after the plea agreement was reached but before he entered his guilty plea. As a result, the statement was not made during "plea discussion[s]" and was admissible at defendant's trial. See *Saunders*, 135 Ill. App. 3d at 606; *Hare*, 49 F.3d at 451; *Watkins*, 85 F.3d at 500.We reject defendant's contention that his statement was a condition precedent to the plea agreement. As set forth above, the testimony provided at the third-stage hearing, as well as assertions contained in defendant's motion to suppress, establish that the plea deal was in place when defendant made his statement. Providing a truthful statement was not a condition precedent of the deal but, rather, was a term of the deal. See *Moore*, 240 S.W.3d at 253. If defendant had not provided a truthful statement, he would have been in breach of the plea deal.

¶ 33        Defendant's statement, which was made pursuant to his obligations under the plea agreement, was admissible. See *United States v. Jones*, 469 F.3d 563, 567 (6th Cir. 2006) (statements made to authorities pursuant to plea agreements are "not made in the course of plea

10

discussions" and, therefore, admissible (internal quotation marks omitted)). The trial court properly denied defendant's postconviction petition.

¶ 34                                    CONCLUSION

¶ 35        The judgment of the circuit court of Rock Island County is affirmed.

¶ 36        Affirmed.

¶ 37        JUSTICE McDADE, dissenting:

¶ 38        The issue before us in this case is whether a self-incriminating statement provided pursuant to a guilty plea agreement between a criminal defendant and the State is inadmissible under Illinois Supreme Court Rule 402(f) (eff. July 1, 2012). The majority rules that where the statement is made after the agreement is reached but before the guilty plea is entered, the statement is not protected under the rule. Relying almost entirely on federal decisions construing the essentially identical Rule 410 of the Federal Rules of Evidence (Fed. R. Evid. 410), the majority holds that defendant Antwoine Eubanks' recorded statement was not protected under Rule 402(f) because the statement was not made during plea discussions but was a term of the deal. *Supra* ¶ 32. I respectfully disagree. Nothing in the language of Rule 402(f) nor in its accepted purpose distinguishes between a statement made during plea negotiations and a statement offered pursuant to said negotiations.

¶ 39        The majority's use of the cited federal decisions is misguided. Rule 410 is a federal rule subject to interpretation by federal courts applying federal law, whereas Rule 402(f) is an Illinois Supreme Court rule subject to interpretation under Illinois law. "Interpretation of the Illinois Supreme Court rules is governed by the same principles as statutory interpretation." *McCarthy v. Taylor*, 2019 IL 123622, ¶ 17. "Our goal is to ascertain and give effect to the drafters' intention." *Id.* "The purpose of Rule 402(f) is 'to encourage the negotiated disposition of criminal cases through elimination of the risk that the accused enter plea discussion at his peril.' " *People v.*

11

*Rivera*, 2013 IL 112467, ¶ 18 (quoting *People v. Friedman*, 79 Ill. 2d 341, 351 (1980)). The rule implicitly recognizes "the significance of the negotiation process to the administration of justice" and appreciates "the devastating effect of the introduction of plea-related statements in the trial of [an] accused." *Friedman*, 79 Ill. 2d at 351. Rule 402(f) therefore does not distinguish between "an offer to enter negotiation[s]" and "a statement made at an advanced stage of the negotiation process in terms of [their] impact upon a jury." *Friedman*, 79 Ill. 2d at 352. Nor does it "require a preamble explicitly demarcating the beginning of plea discussions." (Internal quotation marks omitted.) *Id.*

¶ 40		Considering these policy objectives, our supreme court noted that the key question is whether the "statement [was] made in the furtherance of a plea discussion [or was] an *otherwise independent admission* which is not excluded by [the] rule." (Emphasis added.) *Id.* at 353. This "determination is not a bright-line rule and turns on the factual circumstances of each case." *Rivera*, 2013 IL 112467, ¶ 19. Relevant factors to consider include "the nature of the statements, to whom [the] defendant made the statements, and what the parties to the conversation said." *Id.*

¶ 41		The majority however reasons that Eubanks' statement was a term of the plea deal and thus excluding it "would permit a defendant to breach his [plea] bargain with impunity." (Internal quotation marks omitted.) *Supra* ¶ 25. That is clearly not the case; a defendant who breaches his bargain denies himself any concession the State made to secure the bargain. He returns to the starting line of the criminal prosecution facing any charges and penalties that were removed by the plea deal. The State in turn cannot benefit from the concessions because they are no longer offered to the defendant. Any breach—by the defendant or the State—equalizes the parties by removing the deal's early stages, deliberative discussions, and terms both from the table and from the jury's consideration. If, as our supreme court stated in *Friedman*, the rule does not distinguish between an offer to negotiate and advance stages of the negotiation, then it should not draw a distinction

12

for a statement made pursuant to a specific term in an aborted plea agreement. Offers to negotiate, actual negotiations, and statements required in negotiated plea deals are all made in furtherance of the plea process.

¶ 42　　　　The bright-line rule the majority endorses today—admitting as evidence at trial a potentially inculpatory statement that is a term of the plea deal and therefore not "an otherwise independent admission"—only serves to frustrate the purpose of Rule 402(f). After today's decision, a defendant would be discouraged from entering any plea deal where he must provide any statement, whether it be to locate the object of the crime or to describe the events at issue. That is unless he is sophisticated enough to work out a deal where his statement is a condition precedent. This outcome should be a difficult hurdle for the majority to overcome. Here it has been easily surmounted; the majority simply ignores it.

¶ 43　　　　Instead, the majority cites *People v. Connery*, 296 Ill. App. 3d 384 (1998). *Connery* was decided by this court 22 years ago, and the majority suggests that it is applicable precedent for the rule it endorses today. However, not only is *Connery* factually distinguishable from the instant case, the *Connery* panel specifically noted it would be inapplicable in our current circumstances. *Id.* at 388. In his appeal, Connery challenged a sworn statement made at a court hearing in the presence of the trial court *after* the court accepted his guilty plea and entered judgment on it. *Id.* at 386. But Eubanks made his statement *before* the trial court accepted the agreement and certainly before the trial court entered judgment on the plea. Eubanks's statement was not sworn, and it was not made in the presence of the trial court.

¶ 44　　　　The *Connery* majority noted "that had the statements been made *prior* to entry of the plea and its acceptance by the trial court, our analysis may have been different." (Emphasis in original.) *Id.* at 388 (emphasis in original). I agree; the defendant in *Connery* could not reasonably expect a

13

sworn statement made in the presence of the trial court after it entered judgment on his plea to have had the same level of confidentiality accorded to plea discussions under Rule 402(f). In significant contrast, a self-incriminating statement made pursuant to a plea agreement but before the plea is judicially approved places the defendant in considerable legal peril without any guarantee that the State would honor its agreement and would not withdraw the plea.

¶ 45        The special concurrence in *Connery* hammered this point home, voicing the very same concerns I now raise with the decision in this case, stating:

> "The majority holds that defendant's testimony after the acceptance of his guilty plea was admissible at his subsequent trial. While I concur based on the record in this case, this decision should be narrowly construed.
>
> Thus, if the plea agreement had been contingent on defendant giving self-incriminating testimony immediately after the acceptance of the plea, fundamental fairness would require this testimony to be excluded from his later trial. Otherwise, because of the timing of the sworn testimony, the State could time the defendant's admissions so that they could later be used against the defendant if the plea were vacated. Such a procedure could lead to radical changes in the strategies of defense attorneys, which would significantly reduce the number of these plea agreements and limit the evidence obtained by prosecutors.
>
> For the reasons stated, I specially concur in the majority's reasoning only as it applies to the specific facts of this case." *Id.* at 392 (Lytton, J., specially concurring).

¶ 46        The majority's decision today encourages the State to time a defendant's confession after he has agreed to a plea deal but before the trial court accepts the deal or enters a judgment on it. As I previously noted, this bright-line rule and the strategic gamesmanship it encourages would only serve to frustrate the purpose of Rule 402(f).

¶ 47        For the reasons stated, I respectfully dissent.

**No. 3-18-0117**

| | |
|---|---|
| **Cite as:** | *People v. Eubanks*, 2020 IL App (3d) 180117 |
| **Decision Under Review:** | Appeal from the Circuit Court of Rock Island County, No. 10-CF-298; the Hon. Frank R. Fuhr, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Peter A. Carusona, and Bryon Kohut, of State Appellate Defender's Office, of Ottawa, for appellant. |
| **Attorneys for Appellee:** | Dora Villarreal, State's Attorney, of Rock Island (Patrick Delfino, Thomas D. Arado, and Mark A. Austill, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |