PEOPLE v STEVENS

Docket No. 212661. Submitted May 5, 1999, at Lansing. Decided June 22,
     1999, at 9:00 A.M. Leave to appeal sought.
        James M. Stevens, charged in the Saginaw Circuit Court with felony
           murder, moved for a hearing to determine the admissibility of evi-
           dence of self-incriminating statements he made in a confession to a
           police officer and of self-incriminating statements he made to the
           prosecution in the course of negotiating a plea agreement that he
           eventually repudiated. The court, Robert L. Kaczmarek, J., deter-
           mined that the defendant's statements in the confession to the
           police officer were admissible and that the defendant's statements
           in the plea negotiations were admissible for impeachment purposes
           only. The prosecution appealed by leave granted, arguing that the
           defendant's statements in the plea negotiations also should have
           been ruled admissible in the prosecution's case in chief.
              The Court of Appeals *held*:
              MRE 410(4) provides that any statement made in the course of
           plea discussions with an attorney for the prosecuting authority that
           do not result in a plea of guilty or that result in a plea of guilty
           later withdrawn is not admissible in any proceeding against the
           defendant who made the plea or was a participant in the plea dis-
           cussions. Absent some affirmative indication that the agreement
           was entered into unknowingly or involuntarily, an agreement to
           waive the exclusionary provisions of MRE 410(4) is valid and
           enforceable so as to allow the use of the statement for
           impeachment.
              In this case, the trial court did not err in determining that the
           defendant's self-incriminating statements to the prosecution during
           plea negotiations were knowingly and voluntarily made and thus
           were admissible for impeachment purposes only.
              Affirmed.

1. CRIMINAL LAW — EVIDENCE — SELF-INCRIMINATING STATEMENTS — PLEA
     NEGOTIATIONS.
        The exclusionary provisions of the rule of evidence that states that
           any statement made in the course of plea discussions with an attor-
           ney for the prosecuting authority that do not result in a plea of
           guilty or that result in a plea of guilty later withdrawn is not admis-

sible in any proceeding against the defendant who made the statement may be waived absent some affirmative indication that the agreement was entered into unknowingly or involuntarily; evidence of such a statement may be used against the defendant for impeachment (MRE 410[4]).

2. CRIMINAL LAW — FIFTH AMENDMENT — WAIVER.

A trial court, in determining whether a defendant has knowingly and voluntarily waived the right against self-incrimination, focuses on the accused's age, intelligence level, and previous experience with the police, the nature and length of the questioning, the length of the detention of the accused before giving a statement, the lack of advice to the accused of constitutional rights, whether the accused was injured, in poor health, or intoxicated or drugged, whether the accused was deprived of sleep or medical attention, and whether the accused was physically abused or threatened with abuse (US Const, Am V).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *Michael D. Thomas*, Prosecuting Attorney, and *Janet M. Boes*, Assistant Prosecuting Attorney, for the people.

*George C. Bush*, for the defendant.

Amicus Curiae:

*Elwood Brown, John D. O'Hair, Timothy A. Baughman*, and *Jeffrey Caminsky*, for Prosecuting Attorneys Association of Michigan.

Before: GRIBBS, P.J., and KELLY and HOOD, JJ.

KELLY, J. The prosecution appeals by leave granted the April 14, 1997, order of the trial court allowing the prosecution to use statements made by defendant during plea negotiations for rebuttal purposes only and not in the prosecution's case in chief. We affirm.

In the early morning of May 7, 1988, Sue Garrison, a desk clerk at a motel, was killed. Police Officer Douglas Nelson was dispatched to the motel at 12:54

A.M. on the same day. The victim was discovered lying in a pool of blood and breathing. She later died from severe brain injury caused by a fractured skull.

In the summer of 1996, defendant was incarcerated on charges unrelated to the instant events. A prisoner in the cell next to defendant informed police officers that defendant admitted killing the victim in an attempt to steal money from the motel office. Allegedly, when the victim began screaming, defendant repeatedly hit the victim on the head with a metal pipe he or another perpetrator had brought from their car into the motel office. Pursuant to this information, the prosecutor issued an investigative subpoena and interviewed defendant on February 18, 1997. Defendant invoked his Fifth Amendment right not to incriminate himself and refused to answer any questions relating to the death of the victim.

After the interview, defendant requested an opportunity to again speak with the investigators. Defendant contacted Detective Brown and informed him that he wanted to change his answers and incriminate himself in exchange for a plea bargain. An agreement was reached whereby defendant would plead guilty of second-degree murder for the killing of Susan Garrison. A maximum sentence of at least thirty-five years would be recommended. In addition, the prosecution would agree not to charge defendant's brother with any crime stemming from the events of May 7, 1988. Defendant's brother apparently had been involved in the planning but not the execution of the robbery. In return, defendant would testify against his accomplice, Gerald Hudson, who had already been charged as a participant in the killing.

On April 28, 1997, defendant, two detectives, defendant's attorney, and an assistant prosecuting attorney met in the prosecuting attorney's office where the plea agreement was discussed. Defendant agreed to testify truthfully and to take and pass a polygraph examination.[1] Defendant stated that he, his brother, and Hudson parked their car in front of the motel and went in separate directions to see what they could possibly steal. Defendant stated that after walking around for a while, he saw Hudson in the motel office beating the victim with a metal pipe. Defendant failed the polygraph examination.

After the April 28 interview, defendant contacted Detective Brown. Defendant stated that he wanted to speak with Brown outside the presence of his attorney. At a May 6, 1997, meeting, after being informed of his *Miranda*[2] rights, defendant admitted killing the victim by beating her with a metal pipe. A meeting was scheduled for the following day between defendant and his attorney and the prosecuting attorney.

---

[1] During the interview, the following exchange took place between the prosecutor and defendant:

> [*Prosecutor*]: Okay. I should tell you if you . . . don't perform, I've already read to you as part of your rights that anything you say today can be used against you. Remember that? When I was reading you the stuff.
>
> [*Defendant*]: (Inaudible)
>
> [*Prosecutor*]: If you don't perform your part of the agreement that is either if you end up not pleading guilty as you've agreed or if you lie to us then it's our position that we're not bound by the agreement. Is there any problem with that?
>
> [*Defendant*]: No.
>
> [*Prosecutor*]: And . . . we would then feel free to withdraw from that agreement and to use against you anything you tell us that would incriminate you. Understand that?
>
> [*Defendant*]: Yes. I understand.

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

Defendant was offered the same plea agreement offered at the April interview. Again, defendant admitted killing the victim by striking her with a metal pipe.

On May 19, 1997, a hearing was held in the Saginaw Circuit Court during which the prosecuting attorney apprised the court of the plea agreement between the parties. The trial court reviewed the agreement and asked defendant if he understood the rights he would be waiving if the court approved the agreement. At the end of the court's questioning, defendant stated that he had changed his mind and that he did not want to accept the plea agreement. The court then refused to accept a guilty plea. Trial on one count of first-degree, felony murder was set.

Before trial, defendant moved for an evidentiary hearing to determine the admissibility of statements he made to the prosecution during the plea negotiations. During the hearing, defendant testified that he did not kill the victim and that he said he did only because he was coerced by the police. Defendant also argued that his statements were inadmissible because MRE 410[3] barred the admission at trial of statements made in the course of plea negotiations. The prosecu-

---

[3] MRE 410 states in relevant part:

Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:

*   *   *

(4) Any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

tor argued that MRE 410 applies only to statements made to attorneys, and not to statements made to police officers. Therefore, the prosecutor argued, the statements defendant made to Detective Brown outside the presence of the prosecutor were admissible. Also, the prosecutor argued that defendant waived any objection to the admissibility of his statements to the prosecutor by acknowledging that if he did not tell the truth and plead guilty, his statements would be used against him.

The trial court held that the statements made by defendant to Detective Brown, outside the presence of the prosecution, were admissible because the statements were not coerced. Further, the trial court held that the statements made to the prosecution during the plea negotiations could be used for rebuttal purposes, but could not be used in the prosecution's case in chief.

The prosecution's sole claim on appeal is that the trial court erred in limiting the introduction of defendant's plea negotiation statements to rebuttal uses only and not for use in the prosecution's case in chief. We disagree. Proper construction of a rule of evidence is a question of law. Questions of law are reviewed de novo by this Court. *People v Sierb*, 456 Mich 519, 522; 581 NW2d 219 (1998).

This is an issue of first impression in Michigan. In *United States v Mezzanatto*, 513 US 196, 210; 115 S Ct 797; 130 L Ed 2d 697 (1995), the Supreme Court held that "absent some affirmative indication that the agreement was entered into unknowingly or involuntarily, an agreement to waive the exclusionary provisions of the plea-statement Rules is valid and enforceable." Although the Supreme Court was interpreting

the Federal Rules of Evidence, we note that FRE 410 is identical to MRE 410. The relevant facts of that case involved a defendant who, upon commencing plea negotiations with the prosecutor, orally agreed to and signed a written waiver indicating that if the negotiations failed, the defendant's statements would be used for impeachment purposes at any later proceedings. *Mezzanatto, supra* at 198. In reaching its conclusion, the Court did not specifically state that its holding would apply equally to the admission of plea-negotiated statements in the prosecution's case in chief. In fact, the three-justice concurrence states that the Court's decision does not address the applicability of such statements being admitted in a prosecution's case in chief.[4] We follow the majority and concurring opinions in *Mezzanatto* and leave for another panel of this Court or our Supreme Court the question whether a defendant can validly waive the explicit barrier to the introduction of plea negotiation statements in the prosecution's case in chief.

Turning to the instant case, in order for defendant's plea negotiation statements to be admissible for impeachment purposes, defendant must have knowingly and voluntarily waived his Fifth Amendment right to be free from self-incrimination. In determin-

---

[4] Justice Ginsburg's concurrence, joined by Justices O'Connor and Breyer, states in full:

The Court holds that a waiver allowing the Government to impeach with statements made during plea negotiations is compatible with Congress' intent to promote plea bargaining. *It may be, however, that a waiver to use such statements in the case in chief would more severely undermine a defendant's incentive to negotiate, and thereby inhibit plea bargaining. As the Government has not sought such a waiver, we do not here explore this question.* [*Mezzanatto, supra* at 211 (emphasis added).]

ing if defendant waived this right, a trial court must focus on the following nonexhaustive factors: (1) the age of the accused, (2) his intelligence level, (3) his previous experience with the police, (4) the nature and length of the questioning, (5) the length of detention of the accused before giving a statement, (6) the lack of advice to the accused of his constitutional rights, (7) whether the accused was injured, in poor health, or intoxicated or drugged, (8) whether the accused was deprived of sleep or medical attention, and (9) whether the accused was physically abused or threatened with abuse. *People v Sexton*, 458 Mich 43, 66; 580 NW2d 404 (1998).

During the May 7, 1997, meeting between defendant, his attorney, and the prosecutor, the following information was conveyed to defendant by the prosecutor:

> You [defendant] have been subpoenaed to testify regarding this investigation. You may refuse to answer any question if a truthful answer to the question would tend to incriminate you. Anything you do say may be used against you by State prosecutor[s] in a subsequent legal proceeding. If you have counsel and you do have Mr. George Thick here present, you will be permitted a reasonable opportunity to consult with counsel if you so desire. In other words if you have any questions and wish to talk to your attorney before answering any questions, just let me know and we will make a room available for you to talk with your counsel in private. Furthermore, this is a criminal investigation conducted in cooperation with the Saginaw Township Police Department and Saginaw County Prosecutor's Office. You will be given an oath to tell the truth and your testimony is subject to possible prosecution for perjury should you knowingly make any false statement. The maximum penalty for perjury is 15 years. However, in a homicide charge it could be up to life.

On the basis of the foregoing dialogue during the May 7, 1997, meeting, we conclude the trial court did not err in determining defendant's statements of guilt to have been knowingly and voluntarily made. Therefore, we affirm the decision of the trial court in admitting defendant's inculpatory statements for rebuttal purposes only.[5]

Affirmed.

---

[5] We note that defendant's confession made on May 6, 1997, resulted from conversations held outside the presence of the prosecuting attorney and initiated by defendant. Thus, MRE 410 does not apply. The record clearly shows defendant waived his *Miranda* rights and confessed to the killing of the victim. We find no error in the trial court's thorough analysis of the facts and determination that defendant's May 6, 1997, confession was knowingly, intelligently and voluntarily made. *People v Cheatham*, 453 Mich 1, 11 (BOYLE, J.), 44 (WEAVER, J.); 551 NW2d 355 (1996); *People v Abraham*, 234 Mich App 641; ___ NW2d ___ (1999). Therefore, the statements made on May 6, 1997, by defendant may be used by the prosecution in its case in chief.