PEOPLE v STEVENS

Docket No. 115057. Decided April 25, 2000. On application by the people for leave to appeal, the Supreme Court, in lieu of granting leave, reversed in part the judgment of the Court of Appeals.

James M. Stevens was charged in the Saginaw Circuit Court with felony murder. Before the defendant was charged, the prosecutor was authorized to issue investigatory subpoenas under MCL 767A.1 *et seq.*; MSA 28.1023A(1) *et seq.*, one of which was served on the defendant. The defendant acknowledged his guilt during plea discussions that arose from proceedings pursuant to the subpoena. The contemplated plea was never entered, however. The prosecutor proposed to use the defendant's statements at trial. The court, Robert L. Kaczmarek, J., concluded that the defendant had waived the protections of MRE 410(4), but limited use of most of the disputed evidence to rebuttal only. The Court of Appeals, GRIBBS, P.J., and MICHAEL J. KELLY and HOOD, JJ., affirmed. 236 Mich App 294 (1999) (Docket No. 212661). The people appeal, arguing that, in light of the waiver, the statements should be admissible in the prosecutor's case in chief.

In an opinion per curiam, signed by Chief Justice WEAVER, and Justices TAYLOR, CORRIGAN, YOUNG, and MARKMAN, the Supreme Court *held*:

The defendant's statements were not rendered inadmissible under MRE 410(4), and, if otherwise admissible, can be introduced in the prosecutor's case in chief.

MRE 410(4) provides that any statement made in the course of plea discussions with a prosecutor that do not result in a plea of guilty or in a plea of guilty later withdrawn is inadmissible at trial. However, Michigan allows waiver of virtually all rights afforded to litigants. Thus, a criminal defendant may waive the right not to have statements made during the course of plea negotiations used against him. An appropriate balance of the integrity of the legal process and the interest of facilitating plea bargaining is struck by retaining MRE 410 protections, but allowing criminal defendants to waive those protections, as long as they are appropriately advised and as long as the statements admitted into evidence are voluntarily, knowingly, and understandingly made.

Reversed in part.

Justice KELLY, joined by Justice CAVANAGH, dissenting, stated that statements made during plea negotiations are not admissible as evidence in the prosecution's case in chief.

Something more than a *Miranda* warning is necessary for a court to find that a defendant waived the right to exclude from evidence statements made during plea negotiations. A waiver must be supported by a showing that the accused was aware of the rights being relinquished and the consequences that could result from relinquishing them. In this case, it is clear that, when the defendant entered into plea discussions, he was not aware what he was waiving. He was not specifically advised of the protections offered by MRE 410. Nor was he expressly advised that, by entering into plea negotiations, he would waive those protections. Therefore, his waiver was made involuntarily. An involuntary waiver renders statements obtained pursuant to it inadmissible. The majority's decision renders the protections of MRE 410 illusory and circumvents the purposes of the Supreme Court in adopting the rule.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *Michael D. Thomas*, Prosecuting Attorney, and *Janet M. Boes*, Assistant Prosecuting Attorney, for the people.

*George C. Bush* for the defendant-appellee.

PER CURIAM. This is an interlocutory appeal arising from a circuit court's pretrial evidentiary ruling in a murder case. The defendant acknowledged his guilt during plea discussions that arose from proceedings pursuant to an investigative subpoena. The contemplated plea was never entered, and the question then arose whether his statements would be excluded at trial under MRE 410. The circuit court concluded that rule applied, but that the defendant had waived its protections, though the court limited use of most of the disputed evidence to rebuttal only. The Court of Appeals affirmed.

The prosecutor has filed an application for leave to appeal, arguing that, in light of the waiver, the state-

ment should be admissible in the prosecutor's case in chief. We agree, and reverse the judgment of the Court of Appeals.

I

On the evening of May 6, 1988, the desk clerk of a Saginaw motel was the victim of a robbery. She was severely beaten on the head with a piece of pipe, resulting in her death. The police apparently suspected three men, defendant Stevens, his brother Richard Carlton, and Gerald Hudson. However, for several years they were unable to gather sufficient evidence to begin a prosecution.

The proceedings leading to the instant appeal began over eight years later, when the prosecutor requested investigatory subpoenas under the recently passed statute authorizing that procedure. 1995 PA 148, MCL 767A.1 *et seq.*; MSA 28.1023A(1) *et seq.* Under the statute, such court-authorized subpoenas allow the prosecutor to compel testimony during the course of a criminal investigation.

In early 1997, the 70th District Court signed an order authorizing issuance of such investigative subpoenas, one of which was served on defendant Stevens. As a result, there were several interviews with him. The first was on February 18, 1997. Present were the defendant; Assistant Saginaw County Prosecuting Attorney Richard King; Charles Brown, an investigator in the prosecutor's office; and a Saginaw Township police officer. No attorney was present for the defendant, though he had apparently consulted with the attorney who was representing him in other matters. At that interview the defendant refused to

answer almost all questions, invoking the Fifth Amendment. Nothing he said at that interview is involved in the rulings by the lower court or the instant application.

At the time, the defendant was facing charges in two unrelated cases. On April 14, 1997, he contacted Investigator Brown, raising the possibility of a plea agreement that would dispose of all cases, including the 1988 motel robbery-murder. In a letter to defendant's lawyer, George Thick, Assistant Prosecutor King proposed an agreement that would allow the defendant to plead guilty to second-degree murder, home invasion, car-jacking, and to being an habitual (fourth) offender. The prosecutor would recommend concurrent minimum terms not exceeding thirty-five years. Under the proposed agreement there would be no charges filed against Richard Carlton, the defendant would testify against Gerald Hudson, and the defendant would be required to take and pass a polygraph examination.

On April 28, 1997, the parties met again for proceedings under the investigative subpoena. The same four men who had been present on February 18 were there, as was attorney Thick. During that interview the defendant said that he had been present at the crime scene, but that it was Hudson who killed the victim.

Defendant took the polygraph examination on April 29, 1997, which he failed. He telephoned Investigator Brown on May 1, 1997, and was informed of the results. Brown then told attorney Thick about his conversation with the defendant.

Defendant called Brown again on May 5, 1997, saying that he wanted to talk to Brown without his attor-

ney present. Brown called Thick to inform him of this request, and with attorney Thick's concurrence met alone with the defendant, recording a statement. Defendant again told of the robbery, this time admitting that he killed the victim.

On the following day, May 7, 1997, the investigative subpoena proceedings were renewed for the final time. Again present were Brown, the Saginaw Township officer, attorney Thick, and the defendant. Another assistant prosecutor, James Piazza, attended in place of King. The parties reviewed the plea agreement, and defendant again explained that he beat the victim to death with a piece of pipe.

At each of the four interviews the defendant was given warnings about the use of statements he might make.[1] In introductory remarks at the May 7 interview, Assistant Prosecutor Piazza said:

> You have been subpoenaed to testify regarding this investigation. You may refuse to answer any question if a truthful answer to the question would tend to incriminate you. *Anything that you do say may be used against you by State prosecutor's* [sic] *in a subsequent legal proceeding.* If you have counsel and you do have Mr. George Thick here present, you will be permitted a reasonable opportunity to consult with counsel if you so desire. In other words if you have any questions and wish to talk to your attorney before answering any questions, just let me know and we will make available a room available [sic] for you to talk with your counsel in private. [Emphasis added.]

---

[1] MCL 767A.5(5); MSA 28.1023(A)(5)(5) requires the prosecuting attorney to inform the person being interviewed of the person's constitutional rights regarding self-incrimination before asking questions under an investigative subpoena.

At the two earlier investigatory subpoena proceedings, Assistant Prosecutor King had made similar statements, telling the defendant that anything he said could be used "in a subsequent legal proceeding." Investigator Brown said that he told defendant on May 6 that anything he said, "will and can be used against you in a court of law."

On May 19, 1997, the defendant appeared in circuit court to enter the agreed-upon plea. However, after the statement of the plea bargain, and the court's advice about the rights the defendant would be surrendering by pleading, the defendant said:

> Your Honor, I think I've changed my mind, and I don't want to take this plea bargain.

As the case then proceeded toward trial, a dispute arose about whether defendant's admissions could be used against him. The circuit court conducted an evidentiary hearing on March 24, 1998, concerning the circumstances of the statements. The court rejected defendant's argument that his cooperation and the statements were the product of undue pressure.

The parties also argued the applicability of MRE 410, which provides, in part:

> Inadmissibility of Pleas, Plea Discussions, and Related Statements
>
> Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:
>
> *     *     *
>
> (4) Any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not

result in a plea of guilty or which result in a plea of guilty later withdrawn.

The circuit court held that the rule was inapplicable to the May 6 statement to Investigator Brown, but that it did apply to the inculpatory statements on April 28 and May 7. The court held that defendant "effectively waived the protection of MRE 410." However, the court said that the statements could be used only for rebuttal purposes.[2]

The prosecutor filed an application for leave to appeal to the Court of Appeals, which was granted. Ultimately, the Court issued a decision affirming the circuit court's ruling.[3]

The prosecutor has filed an application for leave to appeal to this Court.

II

As originally enacted[4] MRE 410 was based on the

---

[2] The court did not explicitly so state, but apparently the ruling was that the May 6 statement could be used for any purpose. The distinction is presumably because the May 6 statement was not "made in the course of plea discussions *with an attorney* for the prosecuting authority . . . ." That interview involved only the defendant and Investigator Brown.

[3] 236 Mich App 294; 599 NW2d 789 (1999).

[4] The original language of MRE 410 read as follows:

Inadmissibility of Pleas, Offers of Pleas, and Related Statements.

Except as otherwise provided in this rule, evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer. However, evidence of a statement made in connection with, and relevant to, a plea of guilty, later withdrawn, a plea of nolo contendere, or an offer to plead guilty or nolo contendere to the crime charged or any other crime, is admissible in a criminal proceeding for perjury or false statement.

corresponding federal rule, FRE 410.[5] See *People v Dunn*, 446 Mich 409, 415; 521 NW2d 255 (1994). Following an amendment of the federal rule, we revised MRE 410 to make corresponding changes, effective October 1, 1991. The language of MRE 410(4), which governs the instant case, is identical to its federal counterpart.[6]

The question of waivability of the inadmissibility of statements in plea negotiations is one of first impression in Michigan.[7] However, the United States Supreme Court has faced that issue in *United States v*

---

[5] The note accompanying the original version of MRE 410 said:

MRE 410 is identical with Rule 410 of the Federal Rules of Evidence and Rule 11(e)(6) of the Federal Rules of Criminal Procedure except that the concluding phrase "if the statement was made by the defendant under oath, on the record, and in the presence of counsel" is omitted from MRE 410.

[6] In addition, FR Crim P 11(e)(6) is substantively identical to the federal evidence rule.

[7] The cases interpreting MRE 410 have generally focused on whether particular statements were made in the course of plea negotiations. E.g., *People v Hannold*, 217 Mich App 382; 551 NW2d 710 (1996); *People v Butler*, 193 Mich App 63; 483 NW2d 430 (1992); *People v Heffron*, 175 Mich App 543; 438 NW2d 253 (1988); *People v Manges*, 134 Mich App 49; 350 NW2d 829 (1984).

Contrary to the implication of the dissent, *People v Jones*, 416 Mich 354; 331 NW2d 406 (1982), does not control this case. There was no majority opinion in *Jones*, but rather there were two minority opinions, each joined by only three justices, that concurred in result but not in rationale. (One justice, Justice RILEY, did not participate in *Jones*.) Thus, neither of the two minority opinions in *Jones* constitutes binding precedent for future cases.

"The clear rule in Michigan is that a majority of the Court must agree on a ground for decision in order to make that [decision] binding precedent for future cases. If there is merely a majority for a particular result, then the parties to the case are bound by the judgment but the case is not authority beyond the immediate parties." [*People v Sexton*, 458 Mich 43, 65; 580 NW2d 404 (1998), quoting *People v Anderson*, 389 Mich 155, 170; 205 NW2d 461 (1973).]

*Mezzanatto*, 513 US 196; 115 S Ct 797; 130 L Ed 2d 697 (1995). In that case, the defendant was charged with possession with intent to distribute methamphetamine. The defendant and his attorney asked to meet with the prosecutor to discuss the possibility of cooperation with the government. At the beginning of the meeting, the prosecutor told the defendant that he was not obliged to talk, but that if he wanted to cooperate he would have to be completely truthful. As a condition of proceeding with the discussions, the prosecutor said the defendant would have to agree that any statements he made could be used to impeach any contradictory testimony he might give at trial if the case went that far. The defendant and counsel agreed to proceed under those terms. The plea arrangements broke down because the government concluded that the defendant was not providing completely truthful information.

The case went to trial and the defendant testified in his own defense, denying knowledge that the package he delivered contained methamphetamine. Over defense objection the prosecutor was allowed to cross-examine the defendant with the inconsistent statements he had made during the plea discussions.

The U.S. Court of Appeals for the Ninth Circuit reversed defendant's conviction, taking the view that Congress must have meant to preclude waiver agree-

Accordingly, our decision is not contrary to prior Michigan law as indicated by the dissent because *Jones* simply did not establish *any* law (beyond resolving its own case). Moreover, Justice KAVANAGH's opinion in *Jones* rested on a determination that the statements at issue in that case were obtained involuntarily. *Jones*, *supra* at 361-363. While Justice RYAN's opinion in *Jones* rested on MRE 410, *Jones*, *supra* at 380-382, that opinion included no analysis of whether the protections of MRE 410 may be waived. In sum, *Jones* does not answer the question at hand.

ments such as that made in this case. *United States v Mezzanatto*, 998 F2d 1452, 1454-1456 (CA 9, 1993).

The U.S. Supreme Court rejected that view, relying on the principle that there is a "presumption of waivability" with regard to most rights. In particular, criminal defendants may knowingly and voluntarily waive the most fundamental protections afforded by the constitution. E.g., *Peretz v United States*, 501 US 923, 936; 111 S Ct 2661; 115 L Ed 2d 808 (1991); *Ricketts v Adamson*, 483 US 1, 10; 107 S Ct 2680; 97 L Ed 2d 1 (1987); *Boykin v Alabama*, 395 US 238, 243; 89 S Ct 1709; 23 L Ed 2d 274 (1969); *Johnson v Zerbst*, 304 US 458, 465; 58 S Ct 1019; 82 L Ed 1461 (1938). The same is true of cases interpreting the Federal Rules of Criminal Procedure and in the context of evidentiary rules. 513 US 201-204.[8]

The Court rejected the defendant's specific arguments for imposing a no-waiver limitation on FRE 410 and upheld the use of the statements made in the course of plea negotiations for impeachment purposes.

In the instant case, the Court of Appeals followed *Mezzanatto* and said that the defendant's statements could be used for impeachment or rebuttal. However, the Court declined to decide whether the evidence

---

[8] The United States Supreme Court has recently reiterated this principle in *New York v Hill*, 528 US 110, ___; 120 S Ct 659, 663; 145 L Ed 2d 560 (2000):

> We have, however, "in the context of a broad array of constitutional and statutory provisions," articulated a general rule that presumes the availability of waiver, *United States v Mezzanatto*, 513 US 196, 200-201; 115 S Ct 797; 130 L Ed 2d 697 (1995), and we have recognized that "[t]he most basic rights of criminal defendants are . . . subject to waiver," *Peretz v United States*, 501 US 923, 936; 111 S Ct 2661; 115 L Ed 2d 808 (1991).

was admissible in the prosecutor's case in chief. Referring to the U.S. Supreme Court's *Mezzanatto* decision, it said:

> In reaching its conclusion, the Court did not specifically state that its holding would apply equally to the admission of plea-negotiated statements in the prosecution's case in chief. In fact, the three-justice concurrence states that the Court's decision does not address the applicability of such statements being admitted in a prosecution's case in chief.[9] We follow the majority and concurring opinions in *Mezzanatto* and leave for another panel of this Court or our Supreme Court the question whether a defendant can validly waive the explicit barrier to the introduction of plea negotiation statements in the prosecution's case in chief. [236 Mich App 294, 300; 599 NW2d 789 (1999).]

III

The prosecutor's application for leave to appeal argues that use of the statements should not be limited to impeachment, but should also be available for use in the prosecutor's case in chief.

---

[9] As the Court of Appeals noted, three of the seven justices comprising the majority in *Mezzanatto* signed a concurring opinion adding a caution about the use of such evidence in the prosecutor's case in chief. Justice Ginsburg, joined by Justices O'Connor and Breyer said:

> The Court holds that a waiver allowing the Government to impeach with statements made during plea negotiations is compatible with Congress' intent to promote plea bargaining. It may be, however, that a waiver to use such statements in the case in chief would more severely undermine a defendant's incentive to negotiate, and thereby inhibit plea bargaining. As the Government has not sought such a waiver, we do not here explore this question. [513 US 211.]

Although we are not bound by any legislative intent, as the Supreme Court was in *Mezzanatto*,[10] we find the analysis in *Mezzanatto* relevant here. As in the federal system, Michigan allows waiver of virtually all rights afforded to litigants. Criminal defendants can waive their fundamental rights, including the right to remain silent, to trial by jury, and, indeed, to a trial at all. They may also consent to searches and seizures that would otherwise be illegal. In promulgating MRE 410, we did not intend to depart from the general rule of waivability. Thus, a criminal defendant may waive the right not to have statements made during the course of plea negotiations used against him. Further, we see no reason to create a new doctrine of "limited waivability" whereby a defendant who expressly waives all protection under MRE 410 retains the right not to have his statements used in the prosecutor's case in chief. See *United States v Burch*, 332 US App DC 287, 293; 156 F3d 1315 (1998).

We acknowledge a factual distinction between *Burch* and the present case. In *Burch*, the defendant's waiver of FRE 410 protections was included in a written plea agreement that resulted from the plea negotiations. In this case, defendant's waiver of MRE 410 protections was a precondition to conducting the plea negotiations. The *Burch* court expressed concerns regarding this distinction when it stated:

> It is true that the three concurring Justices in *Mezzanatto*, whose votes were necessary for the majority,

---

[10] Congress enacts the Federal Rules of Evidence, while this Court promulgates the Michigan Rules of Evidence. Further, because no statute exists governing the use of statements made during plea negotiations, this Court need not engage in the inquiry involved in *McDougall v Schanz*, 461 Mich 15; 597 NW2d 148 (1999).

expressed concern that admitting plea negotiation state-
ments in the case-in-chief would too severely undermine
the defendant's incentives to negotiate. See *id.* at 211, 115
S Ct 797. *Such concern is far less warranted with respect
to a waiver, like the one in this case, which is executed as
a result of plea negotiations, rather than as a condition for
such negotiations.* [332 US App DC 294 (emphasis added).]

However, this distinction does not require a differ-
ent result. The principal argument advanced for refus-
ing to accept waivers in this case is that allowing
defendants to waive the protections of MRE 410
would undermine the policy of encouraging plea bar-
gaining, which is the basis of that rule. However, we
agree with the majority in *Mezzanatto* that there is no
reason to conclude that settlement of criminal cases
through plea bargaining will be discouraged, whether
waivers are executed as a result of plea negotiations
or as a precondition to conducting those negotia-
tions.[11] As the Court said:

Indeed, as a logical matter, it simply makes no sense to
conclude that mutual settlement will be encouraged by pre-
cluding negotiation over an issue that may be particularly
important to one of the parties to the transaction. A
sounder way to encourage settlement is to permit the inter-
ested parties to enter into knowing and voluntary negotia-
tions without any arbitrary limits on their bargaining chips.
To use the Ninth Circuit's metaphor, if the prosecutor is
interested in "buying" the reliability assurance that accom-
panies a waiver agreement, then precluding waiver can only
stifle the market for plea bargains. A defendant can "maxi-
mize" what he has to "sell" only if he is permitted to offer
what the prosecutor is most interested in buying. . . . If

---

[11] In fact, *Mezzanatto* involved waiver of FRE 410 protections as a pre-
condition to the plea discussions. Therefore, we do not believe the dis-
tinction drawn by the *Burch* court on this point compels a different result.

prosecutors decide that certain crucial information will be gained only by preserving the inadmissibility of plea statements, they will agree to leave intact the exclusionary provisions of the plea-statement Rules.

In sum, there is no reason to believe that allowing negotiation as to waiver of the plea-statement Rules will bring plea bargaining to a grinding halt; it may well have the opposite effect. Respondent's unfounded policy argument thus provides no basis for concluding that Congress intended to prevent criminal defendants from offering to waive the plea-statement Rules during plea negotiation. [513 US 208-209.]

We conclude that this rationale applies whether a defendant's waiver is partial, as in *Mezzanatto*, or complete, as in this case. See *United States v Burch*, *supra*.

Furthermore, facilitating the plea bargain process is not the sole policy concern implicated by the waiver of MRE 410 protections. The integrity of the legal process is also a consideration, and it is arguably undermined when the courts ignore relevant evidence of criminal activity simply because that evidence was discovered during the course of plea negotiations. The truth-finding function of our legal system is best served when as much evidence as possible relevant to the charged crime is submitted to the finder of fact, and the prosecutor has a duty to the public to present all such evidence of a crime that he obtains. These concerns about the integrity of the legal process must be balanced with the interest of facilitating plea bargaining, and we believe that an appropriate balance is struck by retaining MRE 410 protections, but allowing criminal defendants to waive those protections, as long as they are appropriately advised and as long as

the statements admitted into evidence are voluntarily, knowingly, and understandingly made.

IV

The dissent expresses concern that our decision will "restrain[] a defendant's freedom to negotiate a plea without further implicating himself." *Post*, p 678. However, the ability of a defendant to waive in whole or in part the protections of MRE 410 may actually expand the situations in which plea bargaining is feasible. In some situations, the prosecution may be completely unwilling to invest its resources in plea negotiations that may prove fruitless unless it is assured that statements made during the course of such negotiations will be available for use at a subsequent trial. By allowing MRE 410 to be waived, plea negotiations may occur in such scenarios. Further, the ingenuity of competent and zealous defense counsel could prevent a waiver of MRE 410 from being unconditional. For example, defense counsel could insist that waiver be conditioned on self-incriminating statements only being used at a subsequent trial if the defendant is unwilling to accept a plea agreement of a certain nature or that the waiver be limited so that statements would be admissible only for impeachment purposes.

The dissent would also conclude that the defendant's waiver of rights under MRE 410 was not voluntary. *Post*, pp 676-677. We do not disagree with the obvious point that any valid waiver of legal rights must be voluntary in the basic sense of the term. However, there is no need to address that point at length in this opinion, inasmuch as there is no claim

that the waiver in this case was involuntary.[12] The dissent does not dispute that defendant was informed that any statements he made during the May 7, 1997, investigative subpoena proceedings could be used against him in a subsequent legal proceeding, and that he could refuse to answer any question if a truthful answer would tend to incriminate him. Proceeding to answer such questions in that circumstance obviously constituted a voluntary waiver of any legal right to prevent the answers from being used in a subsequent trial regardless of defendant's subjective knowledge of the content of MRE 410. Moreover, we note that the record does not support the dissent's conclusion that defendant was personally unaware of the provisions of MRE 410.

V

Accordingly, we reverse the judgment of the Court of Appeals in part. The defendant's statements on April 28, 1997, and May 7, 1997, are not rendered inadmissible by MRE 410, and, if otherwise admissible, can be introduced in the prosecutor's case in chief.

---

[12] The trial court found that the statements by defendant were voluntarily, knowingly, and understandingly made. The Court of Appeals affirmed that finding, and no issue is presented in this appeal regarding that conclusion. The trial court found as follows:

The facts before this Court do not indicate that the discussions were entered into unknowingly or involuntarily. Further, the transcripts of the April 28 and May 7 hearings clearly indicate that [defendant] acknowledged that the statements could be used against him should he and the Prosecutor's office not reach a plea agreement. Therefore, the Court concludes that [defendant] effectively waived the protection of MRE 410.

WEAVER, C.J., and TAYLOR, CORRIGAN, YOUNG, and
MARKMAN, JJ., concurred.

KELLY, J. (*dissenting*). Today, the majority fulfills
the prophecy of the United States Supreme Court dis-
senting justices[1] in *United States v Mezzanatto*,[2] and
renders illusory the protections of MRE 410.

In response to the decision in *Mezzanatto*,[3] Justice
Souter recognized the "slippery slope" the Court was
creating and wrote:

> The . . . consequence likely to emerge from today's deci-
> sion is the practical certainty that the waiver demanded will
> in time come to function as a waiver of trial itself. It is true
> that many (if not all) of the waiver forms now employed go
> only to admissibility for impeachment. But although the
> erosion of the Rules has begun with this trickle, the major-
> ity's reasoning will provide no principled limit to it. The
> Rules draw no distinction between use of a statement for
> impeachment and use in the Government's case in chief. If
> objection can be waived for impeachment use, it can be
> waived for use as affirmative evidence, and if the Govern-
> ment can effectively demand waiver in the former instance,
> there is no reason to believe it will not do so just as suc-
> cessfully in the latter. When it does, there is nothing this
> Court will legitimately be able to do about it. The Court is
> construing a congressional Rule on the theory that Con-
> gress meant to permit its waiver. Once that point is passed,
> as it is today, there is no legitimate limit on admissibility of
> a defendant's plea negotiation statements beyond what the
> Constitution may independently impose or the traffic may
> bear. Just what the traffic may bear is an open question, but
> what cannot be denied is that the majority opinion sanc-

---

[1] Justice Souter authored the dissent and was joined by Justice Stevens.

[2] 513 US 196; 115 S Ct 797; 130 L Ed 2d 697 (1995).

[3] *Mezzanatto* held that the defendant waived the procedural protec-
tions of FRE 410 by agreeing that the government could use the state-
ments he made during plea negotiations to impeach him at trial.

tions a demand for waiver of such scope that a defendant who gives it will be unable even to acknowledge his desire to negotiate a guilty plea without furnishing admissible evidence against himself then and there. In such cases, the possibility of trial if no agreement is reached will be reduced to fantasy. The only defendant who will not damage himself by even the most restrained candor will be the one so desperate that he might as well walk into court and enter a naked guilty plea. It defies reason to think that Congress intended to invite such a result, when it adopted a Rule said to promote candid discussion in the interest of encouraging compromise. [*Mezzanatto, supra,* pp 217-218 (Souter, J., dissenting).]

As Justice Souter had foreseen, the Court of Appeals for the District of Columbia recently started to slide down the slope created by the *Mezzanatto* decision. In *United States v Burch*,[4] that court upheld the government's use, in its case in chief, of a defendant's statement made during plea negotiations. The court found that the defendant had waived his protections under FRE 410. He had entered into a plea agreement that provided, if he failed to adhere to its terms, that the prosecution could use his statements as evidence against him. *Id.* at 294.

The *Burch* court found that nothing in the *Mezzanatto* decision required it to limit the use of statements made in plea negotiations to impeachment only. *Id.* at 293. In so doing, the panel brushed aside the fact that three justices in *Mezzanatto* felt strongly enough to join in a separate concurring statement. The three justices agreed that a waiver provision allowing the use of statements from plea negotiations in the prosecution's case in chief may severely inhibit

---

[4] 332 US App DC 287; 156 F3d 1315 (1998).

plea bargaining and undermine a defendant's incentive to negotiate. *Mezzanatto, supra* at 211 (Ginsburg, J., concurring). Here, the majority's decision slides farther down the slope.

In fact, it goes over the edge and into the abyss. It finds, on the basis of *Mezzanatto*, that a waiver took place when the defendant agreed to enter into plea negotiations. It then applies *Burch* to hold that, because defendant waived his MRE 410 protections, the statements he made during plea negotiations can be used in the prosecution's case in chief.

I

I find that the majority improperly extends *Mezzanatto* and *Burch* to this case. Neither *Mezzanatto* nor *Burch* supports the use of defendant's statements made during plea negotiations as evidence in the prosecutor's case in chief. Moreover, this Court indicated in *People v Jones*[5] that Michigan does not allow such use.

A

*Mezzanatto* permitted statements made during plea negotiations to be used for impeachment purposes. Its holding does not necessarily provide a basis for this Court to grant the prosecution the use of those statements in its case in chief. *Harris v New York,*

---

[5] 416 Mich 354; 331 NW2d 406 (1982). Four justices did not sign one opinion in *Jones*. Hence, it is not binding as precedent. However, all six justices participating agreed that Michigan law precludes statements made during plea negotiations from being used in the prosecution's case in chief. The lead opinion and the concurring opinion both reached that conclusion, although they applied different rationales.

401 US 222; 91 S Ct 643; 28 L Ed 2d 1 (1971);[6] *Michigan v Harvey*, 494 US 344; 110 S Ct 1176; 108 L Ed 2d 293 (1990).[7]

B

In *Burch*, the court allowed into evidence statements made as part of plea discussions, but it did so under different circumstances. The court indicated that it would have greater concern about a waiver executed as a condition to plea negotiations, the situation presented here. *Burch, supra* at 294. *Burch* found that the defendant waived his FRE 410 protections as a result of the plea agreement.[8] However, the court continued to apply the protections of FRE 410 to the statements defendant made during plea negotiations. It allowed into evidence only the statements the defendant made after expressly waiving his FRE 410 protections. The waiver occurred at a plea hearing before a judge and was signed and acknowledged by the defendant. *Burch, supra* at 293-294.

Here, the majority approves use in the prosecution's case in chief of statements defendant made during actual plea discussions. The justification for allowing the statements into evidence is the thinly

---

[6] The Court in *Harris* held that *Miranda* violations preclude use of a defendant's statements in the government's case in chief, but do not prevent their use to impeach the defendant's testimony. *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[7] *Harvey* held that statements solicited by the police after a defendant invoked his Sixth Amendment right to counsel were inadmissible in the government's case in chief but could be admitted for impeachment purposes.

[8] The defendant entered into a plea agreement with the prosecution. He appeared before a judge who accepted his plea. Before sentencing, he moved that the court withdraw his guilty plea. The court granted the motion, and the case moved to trial. *Id.* at 291.

worded *Miranda*-like warning defendant received before speaking to the prosecutor about a plea.[9] Contrary to the majority, I find the warning insufficient to support a knowing and voluntary waiver of defendant's MRE 410 protections and the use of his statements as evidence.[10]

Something more than a *Miranda* warning is necessary for a court to find that a defendant waived his right to exclude from evidence statements made during plea negotiations. See *Barnett v State*, 725 So 2d 797 (Miss, 1998).[11] A waiver must be supported by a showing that the accused was aware of the rights being relinquished and the consequences that could result from relinquishing them. *United States v Young*, 73 F Supp 2d 1014 (ND Iowa, 1999).[12]

In *Young*, the defendant entered into a plea agreement that included this provision:

> If the defendant does breach this agreement, he faces the following consequences: (1) all testimony and other information he has provided at any time to attorneys, employees

---

[9] Defendant was advised "[a]nything that you do say may be used against you by State prosecutor's [sic] in a subsequent legal proceeding."

[10] The majority observes that no issue exists concerning whether defendant's waiver was knowing and voluntary, because defendant has not appealed from the voluntariness finding of the Court of Appeals. I disagree. The reason the majority uses for allowing defendant's statements into evidence is that defendant knowingly and voluntarily waived his right to keep the statements out of evidence. Thus, it is inherent in making a determination whether the Court should allow the statements into evidence to examine the underlying waiver to ensure it specifically waived defendant's MRE 410 protections.

[11] In *Barnett*, the Mississippi Supreme Court applied its version of an evidentiary rule that is essentially the same as MRE 410. It held that statements made during plea negotiations after *Miranda* warnings had been given are not admissible at trial.

[12] In *Young*, the court found instructive *Burch*, *supra*, and *United States v Krilich*, 159 F3d 1020 (CA 7, 1998). There was no issue in *Mezzanatto* whether the waiver was entered into voluntarily.

or law enforcement officers of the government, to the
court, or to the federal grand jury, may and will be used
against him in any prosecution or proceeding . . . . [*Id.* at
1016.]

The defendant breached the terms of the agreement,
but the court ruled that his statements, made during
plea negotiations, were nonetheless inadmissible as
evidence at trial. *Id.* at 1025. The court found that the
defendant had not made a knowing and voluntary
waiver of rights. The record contained no evidence
showing that either his attorney or the prosecution
had explained the nature of the rights at issue or the
consequences of waiving them. *Id.* The language used
in the plea agreement did not sufficiently advise the
defendant of the rights being waived. *Id.* at 1024.

Under the facts of this case, it is clear that, when
defendant entered into plea discussions, he was not
aware what he was waiving. At the May 7, 1997,
meeting, the assistant prosecutor made introductory
remarks in which he blanketly advised defendant that
anything he said could be used against him in a legal
proceeding. That statement is too general to support
a finding that defendant voluntarily waived his protec-
tions under MRE 410. *Young, supra* at 1023-1024; cf.
*Burch, supra* at 295.[13]

Defendant was not specifically advised of the pro-
tections offered by MRE 410. He was not expressly
advised that, by entering into plea negotiations, he
would waive those protections. Therefore, in accord
with *Young, supra,* I find that defendant's waiver was

---

[13] The waiver in *Burch* took place during a plea hearing before a judge.
At it, the defendant explicitly acknowledged that he waived his rights
under FRE 410 as part of his plea agreement with the government.

made involuntarily. An involuntary waiver renders statements obtained pursuant to it inadmissible. *Mezzanatto, supra* at 210. Accordingly, here, it is improper for the Court to overturn the judgments of the lower courts and allow into evidence defendant's statements made during plea negotiations.

C

This Court's decision in *Jones, supra,* indicates that statements made during plea negotiations are not admissible as evidence at trial. In *Jones,* the defendant made an incriminating statement while attempting to enter into a plea agreement. The trial court admitted the confession because it found the statement voluntary.

The vote in this Court split evenly. Both the lead opinion and the concurrence voted to reverse on the basis that the trial court should have suppressed the defendant's statement. The lead opinion took the view that the statement was involuntary because it was induced by a promise of leniency. The concurrence took the view that a totality of the circumstances test should be employed to determine whether the statement was voluntary. Ultimately, it decided that the statement was inadmissible under MRE 410.

Regardless of the view adopted, *Jones* indicates that, in Michigan, statements made during plea negotiations are not admissible as evidence.[14] The majority

---

[14] The Court also considered this issue in *People v Conte,* 421 Mich 704; 365 NW2d 648 (1984). It ruled on five consolidated cases there. No clear majority emerged, as the Court split 3-2-1-1. The application of MRE 410 was not directly at issue. In one case, the Court enacted the rule after the statements had been made and, in others, the requirements for invoking the rule's protections were not met.

criticizes my mention of *Jones* because, it states, no
waiver analysis was made there. *Ante* at 662, n 7.
However, in *Jones,* the defendant voluntarily waived
his *Miranda* rights. *Jones, supra* at 357-358. In
essence, it was the same waiver that defendant gave
here. Despite that waiver, each of the justices in
*Jones* found that the defendant's statements could not
be admitted as evidence in the prosecution's case in
chief. Either the statements were made involuntarily
or MRE 410 disallowed them. Thus, it can be inferred
that a waiver is not sufficient to overcome a finding
that a defendant's statement was made involuntarily
or that MRE 410 precludes its use. It follows that the
majority's opinion represents an unwarranted exten-
sion of *Mezzanatto* and *Burch* that is inconsistent
with the manner in which this Court has indicated it
would apply Michigan law.

II

The majority's extension of *Mezzanatto* and *Burch*
to this case circumvents our rationale in adopting
MRE 410. While it is true that this Court adopts the
Michigan Rules of Evidence, whereas Congress enacts
the Federal Rules of Evidence, the rationale behind
MRE 410 and FRE 410 is the same. *Jones, supra.* It is
"to promote the disposition of criminal cases by com-
promise and to permit the unrestrained candor which
produces effective plea discussions." *Id.* at 364.

As foreseen by the *Mezzanatto* dissent, the major-
ity's decision here works against the purposes under-
lying MRE 410 by restraining a defendant's freedom
to negotiate a plea without further implicating him-
self. In reliance on the majority's decision, a prosecu-
tor now may require a waiver as a condition to enter-

ing into plea negotiations. It may negotiate, then back out of the negotiations once the defendant makes inculpatory statements, and use the statements against the defendant in its case in chief at trial. The threat of such an occurrence will, at the least, cause persons accused of a crime to restrain their candor in an effort to protect themselves. Thus, the majority's decision renders the protections of MRE 410 illusory and circumvents our purposes in adopting the rule.

I prefer the view taken by Justice RYAN in his concurrence in *Jones, supra* at 367. Justice RYAN stated that MRE 410 precluded statements made during plea negotiations from being admitted into evidence. There is no requirement that this Court adhere to federal precedent on this issue.[15] Other states that have considered the matter and applied their equivalents to MRE 410[16] have found such statements inadmissible. Their approach avoids the ramifications foreseen by Justice Souter, is consistent with the plain meaning of MRE 410, and fulfills our purpose in adopting MRE 410. I would affirm the decision of the Court of Appeals and hold that statements made during plea negotiations are not admissible as evidence in the prosecution's case in chief.

CAVANAGH, J., concurred with KELLY, J.

---

[15] See, e.g., *Sitz v Dep't of State Police*, 443 Mich 744; 506 NW2d 209 (1993).

[16] *Barnett, supra; State v Jackson*, 325 NW2d 819 (Minn, 1982) (holding that statements made during plea negotiations are inadmissible for all purposes); *People v Crow*, 28 Cal App 4th 440; 33 Cal Rptr 2d 624 (1994) (holding that statements made during plea negotiations are admissible only for impeachment); *People v Connery*, 296 Ill App 3d 384; 694 NE2d 658 (1998) (holding that statements made after a plea agreement has been made are admissible. The court would have pursued a different analysis had the statements been made before the agreement was reached).