*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

WINFORD LEE GASH,

        Defendant-Appellant.

FOR PUBLICATION
April 11, 2024
9:00 a.m.

No. 365693
Wayne Circuit Court
LC No. 20-002055-01-FC

Before: RIORDAN, P.J., and O'BRIEN and MALDONADO, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial conviction of second-degree murder, MCL 750.317.[1] On appeal, defendant contests the sufficiency of the evidence supporting his conviction and whether his defense counsel rendered ineffective assistance by questioning defendant about a withdrawn guilty plea. We hold that defendant's second-degree-murder conviction was supported by the evidence, and that defense counsel did not provide ineffective assistance by asking defendant about his withdrawn guilty plea because defendant expressly waived the protections of MRE 410, which would have otherwise prevented evidence of defendant's withdrawn plea from being admitted. We accordingly affirm.

## I. BACKGROUND

This case arises out of the murder of the victim on December 3, 2018. Sometime after midnight on the night of the murder, Demetrius Jefferson and defendant walked to the victim's house, planning to assault the victim to recover money he owed Jefferson. When the two arrived, the victim walked with them to the front door of the house and was shot in the leg. The bullet severed the victim's femoral artery, leading to his death. Defendant was charged with second-degree murder and possession of a firearm during the commission of a felony (felony-firearm),

---

[1] The jury found defendant not guilty of possession of a firearm during the commission of a felony, MCL 750.227b.

MCL 750.227b(1). The prosecution argued that defendant was guilty of second-degree murder because he either shot the victim or aided and abetted Jefferson to shoot the victim.

Before trial, the prosecution and defendant entered into an agreement in which defendant agreed to plead guilty and testify against Jefferson in exchange for a lesser sentence. The special consideration agreement that defendant signed stated, "It is agreed that any statement made by [defendant] may and will be used against him in any subsequent proceeding, explicitly waiving MRE 410."[2] Defendant pleaded guilty in accordance with this agreement but later moved to withdraw his guilty plea. The prosecution did not object, and the trial court allowed defendant to withdraw his plea.

At trial, Richard Glenn testified that he was playing chess with the victim at the victim's home on the night of the murder. According to Glenn, two men arrived and spoke with the victim. After a brief exchange, the two men and the victim walked toward the front door out of Glenn's sight, and then Glenn heard a gunshot. The victim walked back to Glenn and said that the men shot him. Glenn then got on his bicycle and left the victim.

Douglas Anderson, who was staying with Jefferson at the time of the shooting, testified that he saw Jefferson and defendant walking from the direction of the victim's house. Anderson observed a bulge in defendant's pants, which he thought resembled a handgun. Anderson later overheard Jefferson and defendant discuss their loyalty to each other, and heard Jefferson ask defendant, "[A]re you sure you got [h]im?" to which defendant replied, "I don't miss."

Tanika Vespan, who was also at Jefferson's home on the night of the shooting, testified that she heard Jefferson describe defendant as his "hitter, new soldier." She observed the two retrieve a gun from an upstairs bedroom and fire "test shots" with it. Then defendant and Jefferson left the house, and Vespan later heard a gunshot. After hearing the shot, she walked to the door and saw defendant and Jefferson walking back toward the house. She later heard defendant say, "[W]e need to get the f**k on. We need to take off." She also heard defendant say, "I don't miss."

In text messages that defendant sent after the shooting, he said, "I did some s**t so now I gotta watch my back." When asked what he did, defendant texted, "I can't say" then referred to a musician and his song called "Homicide." Defendant also texted about going to his dad's house, and later texted, "I might have to go to Atlanta."

Defendant testified in his defense that he was at the scene of the shooting but did not shoot the victim or assist Jefferson in shooting the victim. Defendant said that he initially went to the victim's house to assault the victim, but after seeing the victim was short and appeared to be on drugs, defendant changed his mind and started to leave. As defendant was leaving, he heard a gunshot. He turned around and saw Jefferson holding a gun with his arm raised. Defendant testified that his text messages referred to witnessing a murder, not being involved in murder.

---

[2] The special consideration agreement is included in an appendix to the prosecution's brief on appeal.

Defense counsel then questioned defendant about a withdrawn guilty plea:

> *Q*. And at some point did you take a plea?
>
> *A*. Yes, I did.
>
> *Q*. And that was for what?
>
> *A*. Murder.
>
> *Q*. And why did you take that plea?
>
> *A*. I took the plea because, like I say, I was scared, you know what I'm saying. I'm like, damn, I'd rather take this, you know what I'm saying, because I wouldn't want, you know what I'm saying, to get life.
>
> *Q*. So what happened after you took the plea?
>
> *A*. I thought about it and I was like, I can't—I can't take somethin' that I did not do.

On cross-examination, defendant clarified that his withdrawn guilty plea was for second-degree murder.

The jury found defendant guilty of second-degree murder but acquitted him of felony-firearm. Defendant was sentenced to 18 to 30 years' imprisonment. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

On appeal, defendant first argues that there was insufficient evidence to prove beyond a reasonable doubt that he either committed second-degree murder or was an aider and abettor to second-degree murder. We disagree.

### A. STANDARD OF REVIEW

Challenges to the sufficiency of the evidence are reviewed de novo "to determine whether a rational trier of fact could have found every essential element proved beyond a reasonable doubt." *People v Mitchell*, 301 Mich App 282, 289; 835 NW2d 615 (2013). The evidence is considered in the light most favorable to the prosecution, meaning all conflicts in the evidence are resolved in the prosecution's favor. *People v Haynes*, 338 Mich App 392, 417; 980 NW2d 66 (2021).

### B. ANALYSIS

MCL 750.316 defines first-degree murder. "All other murders are murders in the second degree." *People v Mendoza*, 468 Mich 527, 534; 664 NW2d 685 (2003); see also MCL 750.317. "The elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v Goecke*, 457 Mich 442, 463-464; 579 NW2d 868 (1998). Malice—or the intent necessary for second-degree murder—can be

established by showing that the defendant had "the intent to kill, the intent to inflict great bodily harm, or the willful and wanton disregard for whether death will result." *People v Robinson*, 475 Mich 1, 14; 715 NW2d 44 (2006).

Defendant first argues that the prosecution presented insufficient evidence from which the jury could find beyond a reasonable a doubt that defendant committed second-degree murder. It is undisputed that defendant was at the scene of the crime. Defendant admitted that he and Jefferson went to the victim's house to "rough a guy up" because the victim owed Jefferson money. According to Glenn, two men arrived at the victim's house, walked with the victim out of Glenn's sight, and then Glenn heard a shot. Afterwards, the victim walked back to Glenn and said that the two men shot him. It is undisputed that the victim died from the gunshot wound, which punctured his femoral artery. Vespan testified that she heard a gunshot and saw defendant and Jefferson walking back to the house shortly thereafter. Anderson testified that he saw Jefferson and defendant walking from the direction of the victim's house on the night of the shooting, and he observed a bulge in defendant's pants that he believed was a handgun. This testimony was confirmed by defendant, who admitted that he was carrying the gun after the shooting. Anderson later overheard Jefferson ask defendant "are you sure you got [h]im?" to which defendant replied, "I don't miss." Vespan corroborated Anderson's testimony that defendant said, "I don't miss." She also heard defendant say, "[W]e need to get the f**k on. We need to take off," and she heard Jefferson describe defendant as his "hitter, new soldier." The prosecution also presented evidence of text messages in which defendant wrote "I did some s**t so now I gotta watch my back." When asked what he did, defendant first said that he could not say over text, then referenced a musician and his song about homicide. Defendant also texted that he had to go to his dad's home, and later texted about potentially going to Atlanta.

From this evidence, the victim was plainly killed by a gunshot wound, and the jury could reasonably conclude both that defendant was the one who shot the victim and that the shooting was done with malice. Jefferson and defendant went to the victim's home to assault him, bringing a gun with them. Glenn's testimony suggests that the victim was shot in the leg by either defendant or Jefferson. Based on (1) the evidence that defendant was carrying the gun following the shooting, (2) the testimony from two people who said they heard defendant say "I don't miss" following the shooting, and (3) defendant's text messages shortly after the shooting saying "I did some s**t" and, when asked what he did, referencing a song about committing homicide, a jury could infer beyond a reasonable doubt that defendant was the one that shot the victim. Even if defendant did not intend to kill the victim by shooting him, malice can be inferred from evidence that defendant, using a gun to shoot the victim, intentionally set in motion a force likely to cause death or great bodily harm. See *People v Haack*, 396 Mich 367, 375-378; 240 NW2d 704 (1976).

Defendant also challenges the sufficiency of the evidence supporting the prosecution's alternative theory that defendant was guilty of second-degree murder as an aider and abettor.

Aiding and abetting is not a separate substantive offense but "a theory of prosecution that permits the imposition of vicarious liability for accomplices." *Robinson*, 475 Mich at 7. To prove that a defendant aided and abetted a crime,

> the prosecutor must show that (1) the crime charged was committed by the
> defendant or some other person, (2) the defendant performed acts or gave

encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement. [*People v Carines*, 460 Mich 750, 757-758; 597 NW2d 130 (1999) (quotation marks and citation omitted).]

"A defendant is criminally liable for the offenses the defendant specifically intends to aid or abet, or has knowledge of, as well as those crimes that are the natural and probable consequences of the offense he intends to aid or abet." *Robinson*, 475 Mich at 15.

Again, the evidence established that the victim died from being shot in the leg, and that he was shot by either Jefferson or defendant. If Jefferson, rather than defendant, shot and killed the victim, a reasonable trier of fact could still conclude that the victim's death was within the common enterprise that defendant aided. Defendant admitted that he went with Jefferson to the victim's house intending to assault the victim. Vespan's testimony that defendant and Jefferson retrieved a gun from an upstairs bedroom and fired "test shots" with it before leaving the house confirms that defendant was aware that Jefferson brought a gun with him to assault the victim.[3] Regardless of who pulled the trigger, the shooting death of the victim was a natural and probable consequence of going to the victim's house with a gun intending to physically assault him. *Id*. at 11 (holding that "a natural and probable consequence of a plan to assault someone is that one of the actors may well escalate the assault into a murder"). Like the defendant in *Robinson*, defendant escalated the situation by agreeing to join Jefferson (the principal) in physically assaulting the victim and accompanying Jefferson to the victim's house. *Id*. at 12. Also like the defendant in *Robinson*, defendant did "nothing to protect [the victim]" and "did nothing to defuse the situation in which [the victim] was ultimately killed by [the principal]." *Id*. Accordingly, on the basis of the evidence presented, a reasonable trier of fact could have found beyond a reasonable doubt that defendant was guilty of second-degree murder as an aider an abettor.

Arguing against this result, defendant contends that the evidence was insufficient to support his conviction because it was based on circumstantial evidence "subject to interpretation," rendering it speculation. While defendant is correct that circumstantial evidence that amounts to "mere speculation" cannot support a conviction, *People v Xun Wang*, 505 Mich 239, 251; 952 NW2d 334 (2020), circumstantial evidence that is "subject to interpretation" is not necessarily speculative. So long as an inference drawn from circumstantial evidence is reasonable, it can be sufficient to support a defendant's conviction beyond a reasonable doubt. See *People v Hardiman*, 466 Mich 417, 429; 646 NW2d 158 (2002). Defendant does not assert that any necessary inference drawn from the circumstantial evidence in this case was unreasonable.

Defendant alternatively argues that his conviction cannot stand because the prosecution's circumstantial evidence "did not negate every reasonable theory consistent with defendant's innocence." But "[e]ven in a case relying on circumstantial evidence, the prosecution need not negate every reasonable theory consistent with the defendant's innocence, but need merely introduce evidence sufficient to convince a reasonable jury in the face of whatever contradictory

---

[3] Vespan's testimony on this point was inconsistent, but all conflicts in the evidence must be resolved in favor of the prosecution in a challenge to the sufficiency of the evidence. *Haynes*, 338 Mich App at 417.

evidence the defendant may provide." *Id*. at 423-424 (quotation marks and citation omitted). Stated differently, the prosecution only needed to present evidence sufficient to convince the jury of the prosecution's theory of the case. For the reasons explained, the prosecution did just that.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that he was denied the effective assistance of counsel when defense counsel introduced evidence of defendant's withdrawn guilty plea. We disagree.

## A. STANDARD OF REVIEW

Defendant failed to preserve this issue by either moving for a new trial or a *Ginther*[4] hearing, so our review is limited to mistakes apparent on the record. *Haynes*, 338 Mich App at 429. The constitutional question of whether a defendant was denied the effective assistance of counsel presents a question of law reviewed de novo. *Id*.

To establish entitlement to a new trial based on a claim of ineffective assistance, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012).

## B. ANALYSIS

Under MRE 410(a)(1), evidence of "a guilty plea that was later withdrawn or vacated" is inadmissible "against the defendant who made the plea or participated in the plea discussions." MRE 410(a)(1) thus protects a defendant who pleads guilty but later decides to withdraw that guilty plea. This protection, however, can be waived. *People v Stevens*, 461 Mich 655, 666; 610 NW2d 881 (2000).

Defendant signed a special consideration agreement with the prosecution in which he agreed to plead guilty in exchange for a lesser sentence. The agreement read in pertinent part, "It is agreed that any statement made by [defendant] may and will be used against him in any subsequent proceeding, explicitly waiving MRE 410." Under the language of the agreement, defendant consented to statements he made during his guilty plea being used against him in future proceedings, unequivocally waiving the protections afforded to him by MRE 410(a)(1). So, after defendant withdrew his guilty plea and proceeded to trial, MRE 410(a)(1) no longer constrained the prosecution from bringing up defendant's guilty plea during trial.

It was thus reasonable for defense counsel to address defendant's guilty plea before the prosecution could. Doing so allowed the defense to get ahead of the issue. It also gave defendant

---

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

the opportunity to explain why he took the guilty plea—because he was scared. That explanation was not only rational but painted defendant in a sympathetic light.

Calculated risks like this are often necessary to win difficult cases, see *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008), and it clearly constituted sound trial strategy under the circumstances. We accordingly hold that defense counsel's decision to ask defendant about his withdrawn guilty plea did not fall below an objective standard of reasonableness, so defendant cannot establish that he is entitled to relief on his ineffective-assistance claim.

Affirmed.

/s/ Michael J. Riordan
/s/ Colleen A. O'Brien
/s/ Allie Greenleaf Maldonado